<u>LEASE</u>

THIS INDENTURE OF LEASE, made this _24th_ day of _August_, 1982, by and between HONOLULU LIMITED, a Hawaii corporation, whose principal office and post office address is 373 North Nimitz Highway, Honolulu, City and County of Honolulu, State of Hawaii, hereinafter called the "Lessor," and JAMES STEWART ROMIG, unmarried, whose residence and post office address is 3760A Old Pali Road, Honolulu aforesaid, State of Hawaii, 96817, hereinafter called the "Lessee,"

<u>W I T N E S S E T H</u> :

That, for the term, at the rental and upon the conditions, covenants and agreements hereinafter expressed and subject thereto, the Lessor does hereby demise and let unto the Lessee, and the Lessee does hereby lease and hire from the Lessor, the property described in Exhibit "A" attached hereto and made a part hereof, together with all improvements including those to be constructed upon the property, and all rights, easements, privileges and appurtenances thereunto belonging or appertaining unto the Lessee.

TO HAVE AND TO HOLD the same, for a term of approximately FIFTY-SIX (56) years commencing on August _24_, 1982, and terminating fifty-five (55) years and ninety (90) days after the issuance of a final certificate of occupancy or the equivalent for the improvements to be constructed by the Lessor on the property, unless said term shall be sooner terminated or extended as hereinafter provided, the Lessee yielding and paying therefor, unto the Lessor, rent in monthly

installments, except during the initial construction period, each in advance on the first day in each and every month during said term (provided that if any period of the term does not begin on the first day of a calendar month, then the monthly rent for the first and last month of the period shall be prorated accordingly), net over and above all real property taxes, rates, assessments and other charges hereunder payable by the Lessee with respect thereto as follows:

(a) For and during an initial period, beginning upon the commencement date cited above, for construction of improvements on the property and ending NINETY (90) days after the issuance of a final certificate of occupancy or the equivalent for said improvements, the sum of ONE DOLLAR ($1.00) per annum payable annually;

(b) For and during the next year, immediately following the end of the period described above, the sum of SIX HUNDRED FIFTY THOUSAND DOLLARS ($650,000.00) per annum payable FIFTY-FOUR THOUSAND ONE HUNDRED SIXTY-SIX AND 66/100 DOLLARS ($54,166.66) per month;

(c) For and during the next four (4) years, the sum of SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00) per annum, payable FIFTY-EIGHT THOUSAND THREE HUNDRED THIRTY-THREE AND 33/100 DOLLARS ($58,333.33) per month;

(d) For and during the next five (5) years, the sum of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00) per annum, payable SIXTY-TWO THOUSAND

2

FIVE HUNDRED DOLLARS ($62,500.00) per month;

(e) For and during each successive five (5) year period thereafter, the annual rent shall be determined by a formula based upon the increase in the United States Consumer Price Index published by the United States Bureau of Labor Statistics in the category of "United States - All Items." The new annual rent shall be the annual rent for the next preceding period (hereinafter referred to as "basic rent"), plus the "increase" as determined hereunder. The "increase" shall be such percentage increase of the basic rent as is proportional to the rise in the said United States Consumer Price Index for its level for the first month of the next preceding period compared to its level for the first month of the new period; provided, however, that in no event shall the annual rent for the new period as determined herein be less than the annual rent for the next preceding period or more than 125% of the rent determined for the next preceding period (that is, as an example, if the level of said Consumer Price Index for August 1988 is 200 and its level for August 1993 is 220.00, then the rise is 10% and the new annual rent shall be increased by 10% over the previous rent).

If publication of the said Consumer Price Index shall be discontinued, the parties shall use such other index as is then generally recognized and accepted for similar determinations of purchasing power. If the parties are unable to agree on the

3

selection of an index which would most accurately carry out the intent hereof, or if there is a dispute with respect to the computation of the additional rent as herein provided, then the issue with respect thereto shall be determined by arbitration as provided for in this lease.

Pending the determination of the "increase" in rent, the Lessee shall continue to pay the basic rent and when the "increase" in rent has been determined, the Lessee shall pay the deficiency in rent to the Lessor with the next succeeding monthly rent payment.

AND THE LESSOR HEREBY COVENANTS WITH THE LESSEE that the Lessor shall, within eighteen (18) months after the date of this lease complete construction on the demised premises of a warehouse building and related improvements at a cost to the Lessor of up to Two Million Seven Hundred Thousand Dollars ($2,700,000.00) in accordance with plans and specifications approved by the Lessor and the Lessee. Such construction will be subject to the removal of certain easements and the securing of necessary building permits. If the Lessor cannot secure such permits within a reasonable time, either party may terminate this lease; provided that the Lessor shall have no right to terminate this lease if within the first six (6) months of the term the Lessee extends such eighteen-month deadline by a length of time sufficient to accommodate the delay in securing building permits. The Lessor further covenants with the Lessee that upon payment of the rent as aforesaid and upon the observance and performance of the covenants by Lessee hereinafter contained, Lessee shall peaceably hold and enjoy said premises

4

for the term hereby demised without hindrance or interruption by Lessor or any other person or persons lawfully or equitably claiming by, through or under Lessor, except as herein expressly provided.

AND THE LESSEE HEREBY COVENANTS WITH THE LESSOR AS FOLLOWS:

1. _Rent_. That Lessee will pay the said rent in lawful currency of the United States at the office of the Lessor in Honolulu, or at such place in Honolulu as the Lessor shall in writing direct, at the times and in the manner aforesaid, without any deduction and without any notice or demand.

2. _Taxes and Assessments_. That Lessee will also pay, when and as the same respectively become due and payable, all real property taxes and assessments of every description to which the demised premises or any part thereof or improvements thereon, or the Lessor or Lessee in respect thereof are now or may during said term be assessed or become liable, except that any other provisions in this lease to the contrary notwithstanding, real property taxes shall be prorated between the Lessor and the Lessee as of the date the Lessee enters the building to begin installation of the Lessee's improvements or upon the issuance of a final certificate of occupancy or the equivalent for the improvements to be constructed by the Lessor, whichever shall be earlier, and on the termination of this lease; provided, however, that with respect to any assessment made under any betterment or improvement law which may be payable in installments, the Lessee shall be required to pay only such installments of principal and interest as shall become due and payable during said term. The Lessee shall

5

furnish to the Lessor, upon request, evidence satisfactory to the Lessor of each such payment described in this paragraph.

Nothing herein contained shall prevent the Lessee from contesting in good faith, by an appropriate proceeding commenced before the same becomes delinquent, the validity or amount of any tax nor require the payment thereof until the final determination of such contest adversely to the Lessee.

3. <u>General Excise Tax</u>. That Lessee will also pay as additional rental, together with each payment of rental or any other payment required hereunder which is subject to the State of Hawaii general excise tax on gross income, as it may be amended from time to time, an amount which, when added to such rental or other payment, shall yield to the Lessor, after deduction of all such tax payable by Lessor with respect to all such payments, a net amount equal to that which Lessor would have realized from such payments had no such tax been imposed.

4. <u>Rates and Other Charges</u>. That, commencing on the date the Lessee enters the building to begin installation of the Lessee's improvements or upon the issuance of a final certificate of occupancy or the equivalent for the improvements to be constructed by the Lessor, whichever shall be earlier, Lessee will also pay, before the same become delinquent, all utility charges, sewer rates, garbage rates and other similar charges and outgoings to which the demised premises or any part thereof, or improvements thereof, or the Lessor or Lessee in respect thereof, may thereafter during said term be assessed or become liable, whether assessed to or payable by Lessor or Lessee.

6

5. <u>Improvements Required by Law</u>. That Lessee will, at Lessee's own expense, during the whole of said term after the Lessor's initial construction of improvements, make, build, maintain and repair all fences, sewers, drains, roads, sidewalks and parking areas which may be required by law to be made, built, maintained and repaired upon or adjoining or in connection with or for the use of the demised premises or any part thereof.

6. <u>Repair and Maintenance</u>. That Lessee will at Lessee's own expense, from time to time and at all times during said term after the Lessor's initial construction of improvements, well and substantially repair, maintain, amend and keep all buildings and other improvements, including, without limitation, all roof and structural members, all plumbing and other fixtures, now or hereafter built or made on the demised lands with all necessary preparations and amendments whatsoever in good order and condition, reasonable wear and tear and damage from casualty not required hereunder to be insured against excepted. Notwithstanding the foregoing, Lessor shall warrant the structural members of the building for a period of one (1) year from the date of receipt of a final certificate of occupancy and shall promptly repair such structural members if necessary during the one-year warranty period. Upon expiration of said period, Lessor shall have no further responsibility to maintain or repair any portion of the building.

7. <u>Observance of Laws</u>. That Lessee will during the whole of said term after the Lessor's initial construction of improvements keep the demised premises in a strictly clean and sanitary condition and observe and perform all laws,

7

ordinances, rules and regulations, now or hereafter made by any governmental authority, for the time being applicable to or in connection with said premises or the improvements thereon or the operations conducted thereon and will indemnify the Lessor against all actions, suits, damages and claims by whomsoever brought or made by reason of the nonobservance or nonperformance of said laws, ordinances, rules and regulations or of this covenant.

8. <u>Waste and Unlawful Use</u>. That Lessee will not make or suffer any strip or waste or any unlawful, improper or offensive use of the demised premises or any part thereof.

9. <u>Assignment and Subletting</u>. That Lessee will not, without the consent in writing of the Lessor, assign this lease or sublease more than seventy-five percent (75%) of the leasable floor area of the building to be constructed on the demised premises; provided, however, that the Lessor will not unreasonably or arbitrarily withhold Lessor's written consent, or require the payment of any monies for giving such consent other than a reasonable charge for the processing of an application for and preparation of the form of consent.

10. <u>Lessor's Costs and Expenses</u>. That in case the Lessor shall, without fault, be made a party to any litigation (other than condemnation proceedings) commenced by or against the Lessee and arising out of Lessee's occupancy of the demised premises, then the Lessee will pay to Lessor all costs and expenses, including reasonable attorneys' fees incurred by or imposed on the Lessor by or in connection with such litigation, and the Lessee will also pay to Lessor all costs and expenses, including reasonable attorneys' fees, incurred

8

or paid by the Lessor in enforcing any of the covenants and conditions herein contained, in remedying any breach thereof, in recovering possession of the demised premises or any part thereof, or in collecting any delinquent rent, taxes or other charges hereunder payable by Lessee. Provided, however, that in the event Lessee prevails in any legal proceeding commenced by either Lessor or Lessee to enforce the terms of this lease, Lessee shall be entitled to receive from Lessor all of Lessee's costs and expenses, including reasonable attorney's fees.

11. _Inspection_. That Lessee will permit the Lessor and Lessor's agents, at all reasonable times during said term, to enter the demised premises and examine the state of repair and condition thereof and to determine whether the covenants herein contained on the part of the Lessee are being fully observed and performed, and will undertake to repair and make good at Lessee's own expense all defects required by this lease to be repaired by Lessee of which written notice shall be given by the Lessor or Lessor's agents within thirty (30) days after the giving of such notice or such reasonable time as may be specified therein. If the Lessee shall refuse or neglect to commence such repairs and complete the same within said period, or such other period as is reasonably possible to complete such repairs, the Lessor may make such repairs or cause the same to be made and shall not be responsible to the Lessee for any loss or damage that may be caused to the property or business of the Lessee by reason thereof, and if the Lessor shall make such repairs or cause the same to be made, the Lessee shall pay forthwith on demand to the Lessor the cost thereof, with interest at the rate of twelve percent (12%) per annum.

9

12. _Indemnity_. That Lessee will indemnify and hold Lessor harmless from and against all claims and demands for loss or damage, including property damage, personal injury or wrongful death, arising out of or caused by any accident on or in connection with the use or occupancy of the demised premises by Lessee or any other person claiming by, through or under Lessee, or any fire thereon, or any nuisance made or suffered thereon, or any failure of the Lessee to maintain said premises in a safe condition, and will reimburse the Lessor for all Lessor's costs and expenses, including reasonable attorneys' fees, incurred in connection with the defense of any such claims, and will hold all goods, materials, furniture, fixtures, equipment, machinery and other property whatsoever on said premises at the sole risk of Lessee and hold Lessor harmless for any loss or damage thereto by any cause whatsoever.

13. _Liability Insurance_. That Lessee will, at Lessee's own expense, effect and maintain during the whole or said term, commencing when the Lessee enters the building to begin installation of the Lessee's improvements or upon the issuance of a final certificate of occupancy or the equivalent for the improvements to be constructed by the Lessor, whichever shall be earlier, a policy or policies of general comprehensive liability insurance covering the Lessor and Lessee with respect to the demised premises with minimum limits of not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) for injury to one person and not less than ONE MILLION DOLLARS ($1,000,000.00) for injury to more than one person, and also a policy of insurance in the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS

10

($250,000.00) against the claims of third persons for property damage, in an insurance company or companies licensed to do business in the State of Hawaii, and will from time to time upon receiving the same promptly deposit copies of said policies of insurance with the Lessor. Said insurance policies shall contain an endorsement requiring thirty (30) days' written notice from the insurance company to Lessor and Lessee before cancellation or change in coverage, scope or amount.

14. Fire Insurance.

(a) That Lessee will at Lessee's own expense, commencing when the Lessee enters the building to begin installation of the Lessee's improvements or upon the issuance of a final certificate of occupancy or the equivalent for the improvements to be constructed by the Lessor, whichever shall be earlier, at all times during said term keep insured all improvements erected on the demised land during said term, including all plate glass therein, against loss or damage by fire and the risks covered by the standard extended coverage endorsement policies as shall be issued by insurance companies authorized to do business in the State of Hawaii. Such policies shall be issued by an insurance company or companies authorized to do business in the State of Hawaii, as approved by Lessor and Lessee. Said policies shall be issued in the names of the Lessor and Lessee as their interests may appear and shall be in an amount as near as practicable to the full replacement cost of said improvements. Lessee will pay all premiums thereon when due and will from time to time upon receiving the same promptly deposit with the Lessor a certificate of insurance coverage as described.

11

(b)   The aforesaid fire and plate glass insurance policy shall be issued to the Lessee, ~~or to~~ *AND* Lessor ~~at Lessee's sole option~~, and shall contain an endorsement requiring thirty (30) days' written notice from the insurance company to Lessor and Lessee before cancellation or change in the coverage, scope or amount of any policy.

(c)   If, during the term of this lease at any time after the Lessee enters the building to begin installation of the Lessee's improvements or after the issuance of a final certificate of occupancy or the equivalent for the improvements to be constructed by the Lessor, whichever shall be earlier, the building on the demised premises is totally or partially destroyed, rendering the demised premises totally or partially uninhabitable, inaccessible or unusable, Lessee shall restore said building to substantially the same condition as it was in immediately before destruction.  The proceeds of the insurance described above shall be applied to such restoration.  Such destruction or damage shall not terminate this Lease, but the rent payable by Lessee hereunder shall be abated in the same ratio that the portion of the building rendered unusable bears to the total area of the building during the period of de-struction, restoration and repair but in any event, *SUCH ABATEMENT SHALL BE* for not more than 120 days; PROVIDED, HOWEVER, that if such destruction or damage shall render more than fifty percent (50%) of the floor area of such building uninhabitable, inaccessible, or unusable for a period in excess of one hundred twenty (120) days, then Lessee shall have the option to terminate this lease immedi-ately by giving notice to the Lessor, and all further obliga-tions of either party under this lease shall cease as of the

12

effective date of said termination, and the insurance proceeds shall be paid to Lessor. If, however, Lessee elects to restore the building, the insurance proceeds shall be applied to such restoration and the rent shall be abated pro rata as provided above.

In the case of destruction or damage, if existing laws do not permit restoration of such building, then either Lessor or Lessee shall have the option to terminate this Lease immediately by giving notice to the other party, and all further obligations of either party under this lease shall cease as of the effective date of such termination. The proceeds of the insurance described above shall be paid to Lessor.

15. <u>Construction of Improvements</u>. Lessee may make alterations or improvements to the demised premises from time to time as may be necessary, desirable or convenient for Lessee's use and occupancy of the demised premises. Lessee may demolish the building to be constructed by the Lessor on the demised premises, but only under the following conditions: (i) such demolition shall be solely for the purpose of erecting new improvements of equal or higher fair market value as the demolished improvements; (ii) that construction of such improvements shall be bonded to the reasonable satisfaction of Lessor; and (iii) that such demolition and construction shall be performed at the Lessee's sole cost and expense and shall be subject to the prior written consent of Lessor, which consent shall not be unreasonably withheld. In the event of such demolition and construction, the term of this lease shall be extended for an additional twenty (20) years, so as to

13

terminate seventy-five (75) years and ninety (90) days after
the issuance of a final certificate of occupancy or the equi-
valent for the improvements to be constructed by the Lessor on
the property. The annual rent during the extended term
shall continue to be determined and adjusted every five (5)
years in the same manner and subject to the same limitations
prescribed above in this lease for the determination of rent
after the first approximately eleven (11) years of fixed
rent.

16. Liens. That Lessee shall not commit or suffer
any act or neglect whereby the demised premises, including
improvements thereon, or the estate of the Lessee in the same
at any time during the same term shall become subject to any
attachment, lien, charge or encumbrance whatsoever, other than
any authorized mortgages, and shall indemnify and hold harmless
the Lessor against all such liens, charges and encumbrances
and all expenses resulting therefrom, including reasonable
attorneys' fees, it being understood and agreed, however, that
in the event that an attachment, judgment or other lien or
charge is filed or placed against the premises, or the interest
of the Lessee therein, no default under the terms of this
covenant shall be deemed to exist if the Lessee shall within
thirty (30) days thereof take appropriate action to obtain the
release or discharge of such attachment, judgment, lien or
charge.

17. Surrender. That at the end of said term or other
sooner determination of this lease, Lessee will peaceably
deliver up to Lessor possession of the land hereby demised,
together with all buildings and other improvements upon or

14

belonging to the same, by whomsoever made, in good repair, order and condition, except for reasonable wear and tear and as otherwise expressly provided herein; provided, however, that if not then in default hereunder, Lessee may thereupon remove any trade fixtures installed on said premises during said term, but shall repair promptly to Lessor's reasonable satisfaction all damage caused by such removal.

IT IS HEREBY MUTUALLY COVENANTED AND AGREED BY AND BETWEEN THE LESSOR AND LESSEE AS FOLLOWS:

A. <u>Defeasance</u>. That this demise is on the condition that if the Lessee (1) shall fail to pay the said rent or any part thereof within ten (10) days after the same shall become due, whether the same shall or shall not have been legally demanded, or (2) shall fail to observe and perform faithfully any of the other covenants or agreements herein contained and on the part of the Lessee to be observed and performed and any such default shall continue for a period of thirty (30) days after written notice of such default given to Lessee or mailed to the last known address of the Lessee, or such longer period as may be necessary in the exercise of due diligence, to cure such default, or (3) if the Lessee then owning this lease shall become bankrupt or insolvent, or make an assignment for the benefit of creditors, or if Lessee shall file any debtor's proceedings, or take, or have taken against Lessee, any proceedings of any kind or character whatsoever under any provision of the Federal Bankruptcy Act seeking or have any order or decree rendered against the Lessee directing any readjustment, arrangement, postponement, composition or reduction of the Lessee's debts, liabilities, or obligations, or (4) if the

15

Lessee abandons said premises or suffers this lease or any estate or interest hereunder to be taken under any writ of execution, then and in any such event, the Lessor may at once enter into and upon the demised premises or any part thereof in the name of the whole and with or without such entry may at Lessor's option cancel and terminate this lease and thereupon take possession of the said premises and all improvements thereon, and thereby become wholly vested with all rights, title and interest of the Lessee therein and may, with reasonable opportunity first given to Lessee to remove all personal property, equipment and trade fixtures from the demised premises, expel and remove from the said premises the Lessee or those claiming under the Lessee and their effects, all without service of notice or resort to any legal process and without being deemed guilty of any trespass or becoming liable for any loss or damage which may be occasioned thereby and without prejudice to any other remedy or right of action which the Lessor may have for arrears of rent or for any preceding breach or other breach of contract. Such termination may but need not necessarily be made effective by filing an affidavit thereof or a judgment thereof by a court of competent jurisdiction (and mailing a copy thereof to Lessee by registered mail) in the Bureau of Conveyances of the State of Hawaii at Honolulu, or in the Land Court of the State of Hawaii.

B. <u>Protection of Mortgage</u>. In the event that the Lessee shall assign this lease by way of mortgage as herein set forth, the Lessor will not terminate this lease by reason of the occurrence of any of the events of default hereinabove set forth if the mortgagee within ninety (90) days after the Lessor

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-2  Filed 04/20/15  Page 16 of 92

has mailed to the mortgagee at its last known address a written notice of intention to terminate the lease for such cause, shall either cure such default, if the default can be cured by the payment of money, or if such is not the case, shall undertake in writing to perform and shall thereafter perform all the covenants of this lease capable of performance by the mortgagee until such time as this lease shall be transferred upon foreclosure pursuant to said mortgage, it being understood that if such default shall be the failure of the Lessee to promptly discharge or cause to be discharged any lien, charge or encumbrance which may be filed against the demised premises or any improvements thereof junior in priority to said mortgage, the mortgagee may cure such default by accomplishing the foreclosure of said mortgage, and such default shall be deemed to be cured within said period of ninety (90) days if such foreclosure shall be accomplished through proceedings or action instituted within said period and thereafter prosecuted in a diligent and timely manner.  In the event of such foreclosure the time for performance of any obligation other than the payment of money shall be extended by the time reasonably necessary to complete such performance with due diligence.

C.  _Condemnation_.  In case at any time or times during said term said premises or any part thereof shall be taken or condemned by any authority having the power of eminent domain, then and in every such case, the estate and interest of the Lessee in the premises so taken or condemned shall at once cease and determine, and Lessee shall not by reason thereof be entitled to any claim against Lessor or others for compensation or indemnity for leasehold interest, and all compensation and

17

damages payable for or on account of any land or improvements thereon shall be payable to and be the sole property of Lessor; provided, however, Lessee shall have the right to claim and recover from the condemning authority but not from Lessor such compensation as may be separately awarded or recoverable by Lessee in Lessee's own right on account of loss of leasehold possession, on account of Lessee's leasehold improvements unmovable by Lessee, and on account of any cost or loss to which Lessee might be put in removing Lessee's fixtures and equipment; provided, further, however, that in case only part of said premises shall be so taken or condemned, the rent hereunder payable for the remaining period for which rent is fixed shall be reduced in the ratio that the land area of such part bears to the original land area hereby demised. Provided, further, that if more than one-half of the demised land or more than one-half of the floor area of the building shall be so taken or condemned, thereby rendering the remaining premises unsuitable for the purposes of Lessee, Lessee may at Lessee's option surrender to Lessor this lease and all interest of Lessee and any mortgagee in the compensation and damages payable on account of any improvements on the remaining premises so surrendered and thereby be relieved of any further obligations hereunder, such surrender to be made not later than thirty (30) days after Lessee loses the right to possession of the premises so taken or condemned and in sufficient time for Lessor to claim from the condemning authority Lessor's damages therefor. Condemnation of any leasehold interest in said premises or any part thereof shall not terminate this lease nor excuse Lessee from full performance of Lessee's covenants for

18

the payment of money or any other obligations hereunder capable of performance by Lessee, but in such case Lessee may claim and recover from the condemning authority all compensation and damages payable on account of Lessee's leasehold interest.

D. Mortgage. Lessee may mortgage this lease to any bank, insurance company or other lending institution as mortgagee without further consent of the Lessor. The Lessee shall upon execution of any such mortgage forthwith deliver an executed copy thereof to the Lessor. The mortgagee or its assigns may enforce such mortgage and acquire title to the leasehold estate in any lawful way, and pending foreclosure of such mortgage, may take possession of and rent the demised premises, and upon foreclosure of such mortgage may without further consent of the Lessor sell and assign the leasehold estate by assignment in which the assignee shall expressly assume and agree to observe and perform all the covenants of Lessee herein contained, and such assignee may make a purchase money mortgage of this lease to the assignor or mortgagee, provided that a true copy of said assignment and mortgage shall be delivered promptly to Lessor. The mortgagee or its assigns of such mortgage shall be liable to perform the obligations imposed on the Lessee by this lease only during the period such person has possession or ownership of said leasehold estate. Nothing contained in any such mortgage shall release or be deemed to relieve the Lessee from the full and faithful observance and performance of any covenant and condition in this lease contained and on Lessee's part to be observed and performed or from any liability for the nonobservance or nonperformance thereof nor be deemed to constitute a waiver of

19

any rights of the Lessor hereunder, and the terms, covenants and conditions of this lease shall control in case of any conflict between this lease and any such mortgage.

E. _Arbitration_. That if at any time during the term of this lease any dispute, difference or question shall arise concerning the interpretation, construction or effect of the terms and provisions hereof, or concerning full compliance by the Lessee with Lessee's covenants herein contained, or the rights or liabilities of the parties hereto, then every such dispute, difference or question shall at the written request of either Lessee or Lessor be submitted to and determined by arbitration in accordance with the provisions of Chapter 658 of the Hawaii Revised Statutes, as the same now exist or may hereafter be amended. In such event, either party may give to the other written notice of desire to have an arbitration of the matter in dispute. If the parties are unable to agree upon a single arbitrator within ten (10) days after mailing of such notice, the party serving the original notice shall name one of the arbitrators in a written notice, whereupon the other party shall, within ten (10) days after receipt of such notice, name a second arbitrator, and the two so chosen shall appoint a third arbitrator, and they shall constitute the board of arbitrators. None of said arbitrators shall be in the regular employ of either party or be associated in business with either party. If either Lessor or Lessee shall fail within ten (10) days after receipt of written notice from the other to appoint an arbitrator, the arbitrator chosen by the other shall select the second arbitrator, and the two so chosen shall select a third. In the event the two arbitrators so appointed (in

20

either manner) shall, within ten (10) days after selection of the second arbitrator, fail to appoint a third arbitrator, either party, upon at least ten (10) days' written notice to the other, may have the third arbitrator selected or appointed by any judge of the Circuit Court of the judicial circuit in which said premises are located. The decision of such arbitrator, or, if more than one, a majority of the board of three arbitrators, shall be binding upon the Lessor and Lessee, subject to vacation or modification as in said Chapter 658 provided, and the expense of such arbitration shall be borne equally by the Lessor and Lessee. The arbitrators shall have all the powers and duties prescribed by said Chapter 658 as the same now exists or may hereafter be amended and judgment may be entered upon such award by the Circuit Court of the judicial circuit in which said premises are located as provided in said Chapter 658. Pending such arbitration, full performance of all covenants other than the ones in dispute shall be required.

F. _Notices_. Any notice or demand to Lessor or Lessee provided for or permitted by this lease may be given sufficiently for all purposes in writing mailed as registered or certified mail, addressed to such party at its post office address herein specified or the last such address designated by such party in writing to the other, or delivered personally within the State of Hawaii to any of Lessor or Lessee or any officer of Lessee if Lessee is a corporation, as the case may be, and shall be deemed conclusively to have been given on the date of such mailing or personal delivery.

G. _Nonwaiver and Definition_. Time is of the essence of this agreement. The acceptance of rent by the

21

Lessor shall not be deemed a waiver by Lessor of any breach by the Lessee or any covenant herein contained nor be deemed a waiver of any right to declare and enforce a forfeiture for any such breach; the term "premises" wherever it appears herein includes and shall be deemed or taken to include (except where such meaning would be clearly repugnant to the context) the land hereby demised and all buildings and improvements now or at any time hereafter erected or placed on said land; the term "Lessor" in these presents shall mean and include the Lessor above named, its successors and assigns; and the term "Lessee" in these presents shall include the Lessee, his heirs, personal representatives, successors and assigns; the singular shall mean the plural, and any gender shall mean the other, as the context may require.

      H.   <u>Consents</u>. Wherever consents are required of Lessor, such consents shall not be unreasonably withheld.

      I.   <u>Conveyance Tax</u>. The Lessor and the Lessee shall each pay one-half of any and all conveyance taxes imposed by the State of Hawaii and any other governmental agency arising out of the execution of this lease.

      IN WITNESS WHEREOF, the Lessor and Lessee herein have caused these presents to be executed the day and year first above written.

HONOLULU LIMITED

By _____
   Its PRESIDENT

                          Lessor

_____
JAMES STEWART ROMIG

                          Lessee

22

STATE OF HAWAII )
                                    ) SS:
CITY AND COUNTY OF HONOLULU )

On this 04 day of _August_ _____, 1982, before
me appeared _Harry Weinberg_ _____, to me personally
known, who, being by me duly sworn, did say that he is _____
_President_ _____ of HONOLULU LIMITED, a Hawaii corpora-
tion; that the seal affixed to the foregoing instrument is the
corporate seal of such corporation and that such instrument was
signed and sealed on behalf of such corporation by authority of
its Board of Directors; and said _Harry Weinberg_
acknowledged such instrument to be the free act and deed of
such corporation.

_____
Notary Public, State of Hawaii

My commission expires: _11-1-85_

STATE OF HAWAII                    )
                                   ) SS:
CITY AND COUNTY OF HONOLULU        )

        On this 23rd day of _____, 1982,
before me personally appeared JAMES STEWART ROMIG, to me known
to be the person described in and who executed the foregoing
instrument, and acknowledged that he executed the same as his
free act and deed.

                            _____
                            Notary Public, State of Hawaii

                            My commission expires: 11-1-85

## EXHIBIT "A"

All of those certain parcels of land situate at Kaholaloa, Honolulu, City and County of Honolulu, State of Hawaii, described as follows:

-FIRST:-    LOT C, area 1.393 acres, as shown on Map 1, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1056 of Oahu Railway and Land Company;

Together with right of way over all roads now existing on Lots A-1, A-2-A, A-2-B, A-3-B, A-3-C, A-3-D, 10, F-2 and 6, as reserved in Document No. 282601;

Being the same premises described in Transfer Certificate of Title No. 145,205 issued to HONOLULU LIMITED, a Hawaii corporation.

-SECOND:-    LOTS:   30-B-1, area  2,808.0 square feet, and
                            30-B-2, area 11,474.0 square feet, as shown on Map 9, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1758 (amended) of Oahu Railway and Land Company;

Being the same premises described in Transfer Certificate of Title No. 217,231 issued to HONOLULU LIMITED, a Hawaii corporation.

-THIRD:-    LOTS:   D-1, area 2,140.0 square feet, and
                          D-2, area 5,140.0 square feet, as shown on Map 31, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1056 of Oahu Railway and Land Company;

Being the same premises described in Transfer Certificate of Title No. 217,232 issued to HONOLULU LIMITED, a Hawaii corporation.

SUBJECT, HOWEVER, to the following:

1.    -AS TO FIRST (LOT C):

(A)  Notice of Pendency of Action, L. No. 18604, in favor of the State of Hawaii, to acquire title to portions of Lot C, dated October 23, 1947, filed as Document No. 96035.

Note: Final Order of Condemnation, filed March 16, 1953, in favor of the Territory of Hawaii (now State of Hawaii). (Not noted on Transfer Certificate of Title No. 145,205.)

(B) Notice of Pendency of Action, L. No. 20196, in favor of the State of Hawaii, to acquire abutter's rights of vehicle access appurtenant to Lot C, dated September 2, 1949, filed as Document No. 112472.

(C) Restriction of access rights affecting Lot C, as shown on Map 16, as set forth by Land Court Order No. 11868, filed March 19, 1953.

2. -AS TO SECOND (LOTS 30-B-1 and 30-B-2):-

(A) Restriction of access rights in favor of the State of Hawaii, pursuant to two Final Orders of Condemnation, Law No. 20196, the first being recorded in the Bureau of Conveyances of the State of Hawaii in Liber 2412, Page 93, and the second being unrecorded, the portion affected thereby being shown on said Maps 2 and 9.

(B) Subject to possible future restriction of access rights as set forth in the Petition and Lis Pendens of Law 21290, Territory of Hawaii (now State of Hawaii) vs. Inter-Island Steam Navigation Company, Limited, the portions affected thereby being shown on said Maps 2 and 9; nothing herein to be deemed to restrict access or to affect the rights of the Oahu Railway and Land Company to compensation for such restriction, such portion being shown on said Maps 2 and 9 solely for future convenience in description.

3. -AS TO THIRD (LOTS D-1 and D-2):-

(A) Notice of Pendency of Action, L. No. 18604, in favor of the State of Hawaii to acquire title to portions of Lot C, dated October 23, 1947, filed as Document No. 96035.

-ii-

## SECOND AMENDMENT TO LEASE

This Second amendment to the Sublease dated March 17, 1983 by and between **James S. Romig**, as Trustee under that certain unrecorded Revocable Living Trust Agreement dated August 15, 1980, made by James S. Romig as Settlor, hereinafter called "Sublessor" and **Pomare, Ltd**. a Hawaii Corporation, dba Hilo Hattie, The Store of Hawaii, whose address is 700 North Nimitz Highway, Honolulu, Hawaii 96817, hereinafter called the "Sublessee", amends the above lease as follows:

1. For the period commencing on October 1, 2001 to and including March 31, 2002, the minimum monthly rental shall be reduced by $2,000 per month.

Except as provided for herein, all of the terms and conditions of the above referenced sublease remain in full force and effect.

Executed at Honolulu, Hawaii on the 11th day of October, 2001

By _____

    Its: Attorney-In-Fact

               "Sublessor"

**Pomare Ltd**.

By _____

    Its: Chief Financial Officer

               "Sublessee"

## SHORT-FORM SUBLEASE

THIS INDENTURE OF SUBLEASE, made this 17th day of
MARCH_____, 1983, by and between JAMES S. ROMIG, as
Trustee of the James S. Romig Revocable Living Trust dated
August 15, 1980, as amended, whose residence and post office
address is 3707 Round Top Drive, Honolulu, City and County of
Honolulu, State of Hawaii, hereinafter called the "Sublessor,"
and POMARE, LTD., a Hawaii corporation, whose principal office
and post office address is 1200 College Walk, # 204, Honolulu
aforesaid, State of Hawaii, hereinafter called the "Sublessee,"

### W I T N E S S E T H :

Upon the terms and conditions set forth in that
certain unrecorded Sublease of even date herewith between the
Sublessor and Sublessee, all of which terms and conditions are
hereby made a part hereof as fully and completely as if herein
specifically set out in full, the Sublessor has subleased,
demised and let and does hereby sublease, demise and let unto
the Sublessee, all of that certain real property more particu-
larly described in Exhibit "A" attached hereto and made a
part hereof.

TO HAVE AND TO HOLD the same for a term of
approximately twenty-one (21) years commencing on August 24,
1982, and terminating twenty (20) years and ninety (90) days
after the issuance of a final certificate of occupancy or the
equivalent for the improvements to be provided on the premises
by the Sublessor.

IN WITNESS WHEREOF, the Sublessor and the Sublessee have executed this instrument the day and year first above written.

_____
JAMES S. ROMIG
Trustee Aforesaid

                                    Sublessor

POMARE, LTD.

By_____
  Its_____

By_____
  Its_____. Sublessee

U.S. Bankruptcy Court - Hawaii   #15-00203   Dkt # 140-2   Filed  04/20/15   Page 29 of 92

STATE OF HAWAII            )
                          ) SS:
CITY AND COUNTY OF HONOLULU )

On this 17th day of _____, 1983,
before me personally appeared JAMES S. ROMIG, as Trustee of
the James S. Romig Revocable Living Trust dated August 15,
1980, as amended, and said JAMES S. ROMIG acknowledged that
he executed the foregoing instrument as his free act and deed
as such Trustee.

_____
Notary Public, State of Hawaii

My commission expires: 11-1-86


STATE OF HAWAII            )
                          ) SS:
CITY AND COUNTY OF HONOLULU )

On this 17th day of _____, 1983,
before me appeared _____ and _____,
to me personally known, who, being by me duly sworn, did say
that they are _____ and _____,
respectively, of POMARE, LTD., a Hawaii corporation; that the
seal affixed to the foregoing instrument is the corporate seal
of such corporation and that such instrument was signed and
sealed on behalf of such corporation by authority of its Board
of Directors, and said _____ and
_____ acknowledged such instrument to be the
free act and deed of such corporation.

_____
Notary Public, State of Hawaii

My commission expires: 11-1-85

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-2  Filed  04/20/15  Page 30 of 92

<u>EXHIBIT "A"</u>

      All of those certain parcels of land situate at Kaholaloa, Honolulu, City and County of Honolulu, State of Hawaii, described as follows:

    -FIRST:-   LOT C, area 1.393 acres, as shown on Map 1, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1056 of Oahu Railway and Land Company;

         Together with right of way over all roads now existing on Lots A-1, A-2-A, A-2-B, A-3-B, A-3-C, A-3-D, 10, F-2 and 6, as reserved in Document No. 282601;

         Being the same premises described in Transfer Certificate of Title No. 145,205 issued to HONOLULU LIMITED, a Hawaii corporation.

    -SECOND:-  LOTS:  30-B-1, area  2,808.0 square feet, and
                   30-B-2, area 11,474.0 square feet, as shown on Map 9, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1758 (amended) of Oahu Railway and Land Company;

         Being the same premises described in Transfer Certificate of Title No. 217,231 issued to HONOLULU LIMITED, a Hawaii corporation.

    -THIRD:-   LOTS:  D-1, area 2,140.0 square feet, and
                 D-2, area 5,140.0 square feet, as shown on Map 31, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1056 of Oahu Railway and Land Company;

         Being the same premises described in Transfer Certificate of Title No. 217,232 issued to HONOLULU LIMITED, a Hawaii corporation.

    SUBJECT, HOWEVER, to the following:

1.   -AS TO FIRST (LOT C):

    (A)  Notice of Pendency of Action, L. No. 18604, in favor of the State of Hawaii, to acquire title to portions of Lot C, dated October 23, 1947, filed as Document No. 96035.

43,560 FT IN AN ACRE

No.        Final Order of Condemnation, filed March 16,
           1953, in favor of the Territory of Hawaii
           (now State of Hawaii). (Not noted on
           Transfer Certificate of Title No. 145,205.)

      (B)  Notice of Pendency of Action, L. No. 20196, in favor
of the State of Hawaii, to acquire abutter's rights of
vehicle access appurtenant to Lot C, dated September 2,
1949, filed as Document No. 112472.

      (C)  Restriction of access rights affecting Lot C, as shown
on Map 16, as set forth by Land Court Order No. 11868,
filed March 19, 1953.

2.  -AS TO SECOND (LOTS 30-B-1 and 30-B-2):-

      (A)  Restriction of access rights in favor of the State of
Hawaii, pursuant to two Final Orders of Condemnation, Law
No. 20196, the first being recorded in the Bureau of
Conveyances of the State of Hawaii in Liber 2412, Page 93,
and the second being unrecorded, the portion affected
thereby being shown on said Maps 2 and 9.

      (B)  Subject to possible future restriction of access
rights as set forth in the Petition and Lis Pendens of Law
21290, Territory of Hawaii (now State of Hawaii) vs.
Inter-Island Steam Navigation Company, Limited, the
portions affected thereby being shown on said Maps 2 and 9;
nothing herein to be deemed to restrict access or to affect
the rights of the Oahu Railway and Land Company to
compensation for such restriction, such portion being shown
on said Maps 2 and 9 solely for future convenience in
description.

3.  -AS TO THIRD (LOTS D-1 and D-2):-

      (A)  Notice of Pendency of Action, L. No. 18604, in favor
of the State of Hawaii to acquire title to portions of Lot
C, dated October 23, 1947, filed as Document No. 96035.

-ii-

<u>SUBLEASE</u>

THIS INDENTURE OF SUBLEASE, made this 17th day of
March , 1983, by and between JAMES S. ROMIG, as
Trustee of the James S. Romig Revocable Living Trust dated
August 15, 1980, as amended, whose residence and post office
address is 3707 Round Top Drive, Honolulu, Hawaii 96822,
hereinafter called the "Sublessor," and POMARE, LTD., a
Hawaii corporation, whose principal office and post office
address is 1200 College Walk, Suite 204, Honolulu aforesaid,
State of Hawaii 96817, hereinafter called the "Sublessee,"

<u>W I T N E S S E T H</u> :

That, for the term, at the rental and upon the
conditions, covenants and agreements hereinafter expressed
and subject thereto, the Sublessee does hereby lease and
hire from the Sublessor the property described in Exhibit
"A" attached hereto and made a part hereof, together with
all improvements, including those to be constructed upon the
property, and all rights, easements, privileges and appur-
tenances thereunto belonging or appertaining unto the Sub-
lessee.

TO HAVE AND TO HOLD the same, for a term of approx-
imately TWENTY-ONE (21) years commencing on August 24, 1982
and terminating TWENTY (20) years and NINETY (90) days after
the issuance of a final certificate of occupancy or the
equivalent for the improvements to be constructed on the
property, unless said term shall be sooner terminated or
extended as hereinafter provided, the Sublessee yielding and

paying there       unto the Sublessor, rent   onthly
installments, except during the initial construction period,
each in advance on the first day in each and every month
during said term (provided that if any period of the term
does not begin on the first day of a calendar month, then
the monthly rent for the first and last month of the period
shall be prorated accordingly), net over and above all real
property taxes, rates, assessments and other charges
hereunder payable by the Sublessee with respect thereto as
follows:

    (a)  For and during an initial period,
beginning upon the commencement date cited
above, for construction of improvements on the
property and ending NINETY (90) days after the
issuance of a final certificate of occupancy
or the equivalent for said improvements, the
sum of ONE DOLLAR ($1.00) per annum payable
annually;

    (b)  For and during the next year, imme-
diately following the end of the period
described above, the sum of SEVEN HUNDRED FOUR
THOUSAND DOLLARS ($704,000.00) per annum pay-
able FIFTY-EIGHT THOUSAND SIX HUNDRED SIXTY-
SIX and 66/100 DOLLARS ($58,666.66) per month;

    (c)  For and during each of the next four
(4) years, the annual rental shall be deter-
mined by a formula based upon the increase in
the United States Consumer Price Index pub-
lished by the United States Bureau of Labor
Statistics in the category of "United States -
All Items." The new annual rent shall be the

annual r__t for the next preceding ye__ __ere-
inafter referred to as "basic rent"), plus the
"increase" as determined hereunder. The
"increase" shall be such percentage increase
of the basic rent as is proportional to the
rise in the said United States Consumer Price
Index for its level for the first month of the
next preceding year compared to its level for
the first month of the new year; provided,
however, that in no event shall the annual
rent for the new year as determined herein be
less than the annual rent for the next preced-
ing year (that is, as an example, if the level
of said Consumer Price Index for August, 1983,
is 200 and its level for August, 1984, is
208.00, then the rise is four percent (4%) and
the new annual rent shall be increased by four
percent (4%) over the previous rent).

If publication of the said Consumer Price
Index shall be discontinued, the parties shall
use such other index as is then generally
recognized and accepted for similar determina-
tions of purchasing power. If the parties are
unable to agree on the selection of an index
which would most accurately carry out the
intent hereof, or if there is a dispute with
respect to the computation of the additional
rent as herein provided, then the issue with
respect thereto shall be determined by arbi-
tration as provided for in this Sublease.

3

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-2  Filed  04/20/15  Page 35 of 92

Pending the determination of the "increase" in rent, the Sublessee shall continue to pay the basic rent and when the "increase" in rent has been determined, the Sublessee shall pay the deficiency in rent to the Sublessor with the next succeeding monthly rent payment.

(d)  For and during the next five (5) years, the annual rent shall be greater of EITHER the sum of EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($850,000.00) OR the sum of the annual rental for the next preceding year.

(e)  For and during the next year, the annual rental shall be increased by TWENTY-FIVE PERCENT (25%) of the annual rental for the next preceding year; provided, however, that the annual rental shall not be less than ONE MILLION SIXTY-TWO THOUSAND FIVE HUNDRED DOLLARS ($1,062,500.00) nor shall annual rental exceed fair market rental value as determined by mutual agreement or, if no agreement, by appraisal as provided in section E(2) of this Sublease; PROVIDED, HOWEVER, that notwithstanding the aforementioned, if fair market rental value as so determined by agreement or appraisal shall be less than ONE MILLION SIXTY-TWO THOUSAND FIVE HUNDRED DOLLARS ($1,062,500.00) per annum, the annual rental shall be ONE MILLION SIXTY-TWO THOUSAND FIVE HUNDRED DOLLARS ($1,062,500.00).

4

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-2  Filed  04/20/15  Page 36 of 92

(f) For and during each of the next four (4) years, the annual rental shall not be increased and shall be the same as the annual rental determined pursuant to paragraph (e).

(g) For and during the next year, the annual rent shall be increased by TWENTY-FIVE PERCENT (25%) of the annual rental for the next preceding year; provided, however, that the annual rental shall not be less than ONE MILLION ONE HUNDRED SEVENTY-ONE THOUSAND EIGHT HUNDRED SEVENTY-FIVE DOLLARS ($1,171,875.00) nor shall annual rental exceed fair market rental value as determined by mutual agreement or, if no agreement, by appraisal as provided in section E(2) of this Sublease. PROVIDED, HOWEVER, that notwithstanding the aforementioned, if fair market rental value as so determined by agreement or appraisal shall be less than ONE MILLION ONE HUNDRED SEVENTY-ONE THOUSAND EIGHT HUNDRED SEVENTY-FIVE DOLLARS ($1,171,875.00) per annum, the annual rental shall be ONE MILLION ONE HUNDRED SEVENTY-ONE THOUSAND EIGHT HUNDRED SEVENTY-FIVE DOLLARS ($1,171,875.00).

(h) For and during each of the next four (4) years, the annual rental shall not be increased and shall be the same as the rental determined pursuant to paragraph (g).

AND THE SUBLESSOR HEREBY COVENANTS WITH THE SUB-LESSEE that the Sublessor shall, within eighteen (18) months

5

after the date of this Sublease, provide to the Sublessee on the demised premises a warehouse building and related improvements in accordance with plans and specifications approved by the Sublessor and the Sublessee. Such construction will be subject to the removal of certain easements and the securing of necessary building permits. If such permits cannot be secured within a reasonable time, either party may terminate this Sublease; provided that the Sublessor shall have no right to terminate this Sublease if within the first six (6) months of the term the Sublessee extends such eighteen (18) month deadline by a length of time sufficient to accommodate the delay in securing building permits. The Sublessor further covenants with the Sublessee that upon payment of the rent as aforesaid and upon the observance and performance of the covenants by Sublessee hereinafter contained, Sublessee shall peaceably hold and enjoy said premises for the term hereby demised without hindrance or interruption by Sublessor or any other person or persons lawfully or equitably claiming by, through or under Sublessor, except as herein expressly provided.

AND THE SUBLESSEE HEREBY COVENANTS WITH THE SUBLESSOR AS FOLLOWS:

1. <u>Rent</u>. That Sublessee will pay the said rent in lawful currency of the United States at the office of the Sublessor in Honolulu, or at such place in Honolulu as the Sublessor shall in writing direct, at the times and in the manner aforesaid, without any deduction and without any notice or demand.

2. <u>Taxes and Assessments</u>. That Sublessee will also pay, when and as the same respectively become due and

6

U.S. Bankruptcy Court - Hawaii  #15-00203   Dkt # 140-2   Filed  04/20/15   Page 38 of 92

payable, all real property taxes and assessments of every
description to which the demised premises or any part
thereof or improvements thereon, or the Sublessor or Sub-
lessee in respect thereof are now or may during said term be
assessed or become liable, except that any other provisions
in this Sublease to the contrary notwithstanding, real
property taxes shall be prorated between the Sublessor and
the Sublessee as of the date the Sublessee enters the
building to begin installation of the Sublessee's improve-
ments or upon the issuance of a final certificate of occu-
pancy or the equivalent for the improvements to be provided
by the Sublessor, whichever shall be earlier, and on the
termination of this Sublease; provided, however, that with
respect to any assessment made under any betterment or
improvement law which may be payable in installments, the
Sublessee shall be required to pay only such installments of
principal and interest as shall become due and payable
during said term.  The Sublessee shall furnish to the Sub-
lessor, upon request, evidence satisfactory to the Sublessor
of each such payment described in this paragraph.

    Nothing herein contained shall prevent the Sub-
lessee from contesting in good faith, by an appropriate
proceeding commenced before the same becomes delinquent, the
validity or amount of any tax nor require the payment
thereof until the final determination of such contest
adversely to the Sublessee.

    3.   <u>General Excise Tax</u>.  That Sublessee will also
pay as additional rental, together with each payment of
rental or any other payment required hereunder which is
subject to the State of Hawaii general excise tax on gross

7

income, as it may be amended from time to time, an amount which, when added to such rental or other payment, shall yield to the Sublessor, after deduction of all such tax payable by Sublessor with respect to all such payments, a net amount equal to that which such Sublessor would have realized from such payments had no such tax been imposed.

4. <u>Rates and Other Charges</u>. That, commencing on the date the Sublessee enters the building to begin installation of the Sublessee's improvements or upon the issuance of a final certificate of occupancy or the equivalent for the improvements to be provided by the Sublessor, whichever shall be earlier, Sublessee will also pay, before the same become delinquent, all utility charges, sewer rates, garbage rates and other similar charges and outgoings to which the demised premises or any part thereof, or improvements thereof, or the Sublessor or Sublessee in respect thereof, may thereafter during said term be assessed or become liable, whether assessed to or payable by Sublessor or Sublessee.

5. <u>Improvements Required by Law</u>. That Sublessee will, at Sublessee's own expense, during the whole of said term after the Sublessor's initial construction of improvements, make, build, maintain and repair all fences, sewers, drains, roads, sidewalks and parking areas which may be required by law to be made, built, maintained and repaired upon or adjoining or in connection with or for the use of the demised premises or any part thereof.

6. <u>Repair and Maintenance</u>. That Sublessee will at Sublessee's own expense, from time to time and at all times during said term after the Sublessor's initial

8

delivery of improvements, well and substantially repair, maintain, amend and keep all buildings and other improvements, including, without limitation, all roof and structural members, all plumbing and other fixtures, now or hereafter built or made on the demised lands with all necessary reparations and amendments whatsoever in good order and condition, reasonable wear and tear and damage from casualty not required hereunder to be insured against excepted. Notwithstanding the foregoing, Sublessor shall warrant the structural members of the building for a period of one (1) year from the date of receipt of a final certificate of occupancy and shall promptly repair such structural members if necessary during the one-year warranty period. Upon expiration of said period, Sublessor shall have no further responsibility to maintain or repair any portion of the building.

7. <u>Observance of Laws</u>. That Sublessee will during the whole of said term after the Sublessor's initial delivery of improvements keep the demised premises in a strictly clean and sanitary condition and observe and perform all laws, ordinances, rules and regulations, now or hereafter made by any governmental authority, for the time being applicable to or in connection with said premises or the improvements thereon or the operations conducted thereon and will indemnify the Sublessor against all actions, suits, damages and claims by whomsoever brought or made by reason of the nonobservance or nonperformance of said laws, ordinances, rules and regulations or of this covenant.

8. <u>Waste and Unlawful Use</u>. That Sublessee will not make or suffer any strip or waste or any unlawful,

U.S. Bankruptcy Court - Hawaii  #15-00203   Dkt # 140-2   Filed  04/20/15   Page 41 of 92

improper or offensive use of the demised premises or any
part thereof.

9. <u>Assignment and Subletting</u>. That Sublessee
will not, without the consent in writing of the Sublessor,
assign this Sublease or sub-sublease the whole or any
portion of the building to be constructed on the demised
premises; provided, however, that the Sublessor will not
unreasonably or arbitrarily withhold Sublessor's written
consent, or require the payment of any monies for giving
such consent other than a reasonable charge for the process-
ing of an application for and preparation of the form of
consent. If Sublessee is a corporation, any dissolution,
merger or consolidation or other reorganization of Sub-
lessee, or a sale or transfer of a controlling percentage of
the capital stock of Sublessee (other than such sale or
transfer by any individual stockholder to a trust in which
said stockholder is trustee and beneficiary and has voting
power), or the sale of at least seventy-five percent (75%)
of the value of the assets of Sublessee, shall be deemed a
voluntary assignment of this Sublease. PROVIDED, HOWEVER,
that Sublessee shall have the right, without Sublessor's
consent, to assign this Sublease to a corporation with which
it might merge or consolidate, to any parent or subsidiary
of Sublessee, or to any corporation, the controlling voting
shares of which are owned by Sublessee's stockholders,
provided that any such assignee executes an agreement assum-
ing Sublessee's obligations hereunder.

10. <u>Sublessor's Costs and Expenses</u>. That in case
the Lessor under the Master Lease described in section J,
below (hereinafter the "Master Lessor"), or the Sublessor

10

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-2  Filed 04/20/15  Page 42 of 92

shall, withou ult, be made a party to ï itigation (other than condemnation proceedings) commenced by or against the Sublessee and arising out of Sublessee's occupancy of the demised premises, then the Sublessee will pay to Sublessor or Master Lessor, as the case may be, all costs and expenses, including reasonable attorneys' fees, incurred by or imposed on the Sublessor or Master Lessor by or in connection with such litigation, and the Sublessee will also pay to Sublessor or Master Lessor all costs and expenses, including reasonable attorneys' fees, incurred or paid by the Sublessor or Master Lessor in enforcing any of the covenants and conditions herein contained, in remedying any breach thereof, in recovering possession of the demised premises or any part thereof, or in collecting any delinquent rent, taxes or other charges hereunder payable by Sublessee. Provided, however, that in the event Sublessee prevails in any legal proceeding commenced by either Sublessor or Sublessee to enforce the terms of this Sublease, Sublessee shall be entitled to receive from Sublessor all of Sublessee's costs and expenses, including reasonable attorneys' fees.

11. <u>Inspection</u>. That Sublessee will permit the Master Lessor, Sublessor and their agents, at all reasonable times during said term, to enter the demised premises and examine the state of repair and condition thereof and to determine whether the covenants herein contained on the part of the Sublessee are being fully observed and performed, and will undertake to repair and make good at Sublessee's own expense all defects required by this Sublease to be repaired by Sublessee of which written notice shall be given by the

11

Sublessor or the Lessor's agents within thirty (30) days after the giving of such notice or such reasonable time as may be specified therein. If the Sublessee shall refuse or neglect to commence such repairs and complete the same within said period, or such other period as is reasonably possible to complete such repairs, the Sublessor may make such repairs or cause the same to be made and shall not be responsible to the Sublessee for any loss or damage that may be caused to the property or business of the Sublessee by reason thereof, and if the Sublessor shall make such repairs or cause the same to be made, the Sublessee shall pay forthwith on demand to the Sublessor the cost thereof, with interest at the rate of twelve percent (12%) per annum.

12. _Indemnity_. That Sublessee will indemnify and hold Sublessor and Master Lessor harmless from and against all claims and demands for loss or damage, including property damage, personal injury or wrongful death, arising out of or caused by any accident on or in connection with the use or occupancy of the demised premises by Sublessee or any other person claiming by, through or under Sublessee, or any fire thereon, or any nuisance made or suffered thereon, or any failure of the Sublessee to maintain said premises in a safe condition, and will reimburse the Sublessor or Master Lessor for all Sublessor's or Master Lessor's costs and expenses, including reasonable attorneys' fees, incurred in connection with the defense of any such claims, and will hold all goods, materials, furniture, fixtures, equipment, machinery and other property whatsoever on said premises at the sole risk of Sublessee and hold Sublessor and Master

12

Lessor harml─ ─ ─or any loss or damage th─e─ ─ by any cause whatsoever.

13. <u>Liability Insurance</u>. That Sublessee will, at Sublessee's own expense, effect and maintain during the whole of said term, commencing when the Sublessee enters the building to begin installation of the Sublessee's improvements or upon the issuance of a final certificate of occupancy or the equivalent for the improvements to be provided by the Sublessor, whichever shall be earlier, a policy or policies of general comprehensive liability insurance covering the Master Lessor, Sublessor and Sublessee and Sublessor's mortgagee, if any, with respect to the demised premises with minimum limits of not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) for <u>injury</u> to one person and not less than ONE MILLION DOLLARS ($1,000,000.00) for injury to more than one person, and also a policy of insurance in the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) against the claims of third persons for <u>property damage</u>, in an insurance company or companies licensed to do business in the State of Hawaii, and will from time to time upon receiving the same promptly deposit copies of said policies of insurance with the Sublessor and Master Lessor. Said insurance policies shall contain an endorsement requiring thirty (30) days' written notice from the insurance company to Master Lessor, Sublessor, Sublessee and Sublessor's mortgagee, if any, before cancellation or change in coverage, scope or amount.

Not more frequently than each two (2) years, if, in the opinion of the insurance broker retained by Sublessor, the amount of public liability and property damage coverage

13

at that time is not adequate, based upon the use of and
public access to the premises and the amount of such
insurance maintained by the operators of similar businesses
in Honolulu, Sublessee shall increase the insurance coverage
as required by Sublessor's insurance broker.

14. Fire Insurance.

(a) That Sublessee will at Sublessee's own
expense, commencing when the Sublessee enters the building
to begin installation of the Sublessee's improvements or
upon the issuance of a final certificate of occupancy or the
equivalent for the improvements to be provided by the Sub-
lessor, whichever shall be earlier, at all times during said
term keep insured all improvements, erected on the demised
land during said term, including all plate glass therein,
against loss or damage by fire and the risks covered by the
standard extended coverage endorsement policies as shall be
issued by insurance companies authorized to do business in
the State of Hawaii. Such policies shall be issued by an
insurance company or companies authorized to do business in
the State of Hawaii, as approved by Master Lessor, Sublessor
and Sublessee. Said policies shall be issued in the names
of the Master Lessor, Sublessor, Sublessee and Sublessee's
mortgagee, if any, as their interests may appear, and shall
be in an amount as near as practicable to the full replace-
ment cost of said improvements. Sublessee will pay all
premiums thereon when due and will from time to time upon
receiving the same promptly deposit with the Master Lessor,
Sublessor and Sublessor's mortgagee, if any, a certificate
of insurance coverage as described.

14

U.S. Bankruptcy Court - Hawaii  #15-00203   Dkt # 140-2   Filed  04/20/15   Page 46 of 92

The aforesaid fire and ~ te glass insurance policy shall be issued to the Sublessee and Sublessor, and shall contain an endorsement requiring thirty (30) days' written notice from the insurance company to Master Lessor, Sublessor, Sublessee and Sublessor's mortgagee, if any, before cancellation or change in the coverage, scope or amount of any policy.

(c)  If, during the term of this Sublease at any time after the Sublessee enters the building to begin installation of the Sublessee's improvements or after the issuance of a final certificate of occupancy or the equivalent for the improvements to be constructed by the Sublessor, whichever shall be earlier, the building on the demised premises is totally or partially destroyed, rendering the demised premises totally or partially uninhabitable, inaccessible or unusable, Sublessee shall restore said building to substantially the same condition as it was in immediately before destruction.  The proceeds of the insurance described above shall be applied to such restoration.  Such destruction or damage shall not terminate this Sublease, but the rent payable by Sublessee hereunder shall be abated in the same ratio that the portion of the building rendered unusable bears to the total area of the building during the period of destruction, restoration and repair but in any event such abatement shall be for not more than one hundred twenty (120) days; PROVIDED, HOWEVER, that if such destruction or damage shall render more than fifty percent (50%) of the floor area of such building uninhabitable, inaccessible or unusable for a period in excess of one hundred twenty (120) days, then Sublessee shall have the

15

U.S. Bankruptcy Court - Hawaii  #15-00203   Dkt # 140-2   Filed  04/20/15   Page 47 of 92

option to ter  ite this Sublease immediat   by giving notice to the Sublessor, and all further obligations of either party under this Sublease shall cease as of the effective date of said termination, and the insurance proceeds shall be paid to Sublessor.  If, however, Sublessee elects to restore the building, the insurance proceeds shall be applied to such restoration and the rent shall be abated pro rata as provided above.

In the case of destruction or damage, if existing laws do not permit restoration of such building, then either Sublessor or Sublessee shall have the option to terminate this Sublease immediately by giving notice to the other party, and all further obligations of either party under this Sublease shall cease as of the effective date of such termination.  The proceeds of the insurance described above shall be paid to Sublessor.

15.  <u>Construction of Improvements</u>.  Sublessee may make alterations or improvements to the demised premises from time to time as may be necessary, desirable or con-venient for Sublessee's use and occupancy of the demised premises; provided, however, that in the event such altera-tions or improvements shall exceed a cost of $20,000, such improvements shall be subject to the prior written consent of Sublessor, which consent shall not be unreasonably with-held.

16.  <u>Liens</u>.  That Sublessee shall not commit or suffer any act or neglect whereby the demised premises, including improvements thereon, or the estate of the Sub-lessee in the same at any time during the same term shall

16

become subject to any attachment, lien, charge or encumbrance whatsoever, other than any authorized mortgages, and shall indemnify and hold harmless the Sublessor against all such liens, charges and encumbrances and all expenses resulting therefrom, including reasonable attorneys' fees, it being understood and agreed however, that in the event that an attachment, judgment or other lien or charge is filed or placed against the premises, or the interest of the Sublessee therein, no default under the terms of this covenant shall be deemed to exist if the Sublessee shall within thirty (30) days thereof take appropriate action to obtain the release or discharge of such attachment, judgment, lien or charge.

17. <u>Surrender</u>. That at the end of said term or other sooner determination of this Sublease, Sublessee will peaceably deliver up to Sublessor possession of the land hereby demised, together with all buildings and other improvements upon or belonging to the same, by whomsoever made, in good repair, order and condition, except for reasonable wear and tear and as otherwise expressly provided herein; provided, however, that if not then in default hereunder, Sublessee may thereupon remove any trade fixtures installed on said premises during said term, but shall repair promptly to Sublessor's reasonable satisfaction all damage caused by such removal.

IT IS HEREBY MUTUALLY COVENANTED AND AGREED BY AND BETWEEN THE SUBLESSOR AND SUBLESSEE AS FOLLOWS:

A. <u>Defeasance</u>. That this demise is on the condition that if the Sublessee (1) shall fail to pay the said rent or any part thereof within ten (10) days after the same

17

shall become    , whether the same shall    shall not have

been legally demanded, or (2) shall fail to observe and

perform faithfully any of the other covenants or agreements

herein contained and on the part of the Sublessee to be

observed and performed and any such default shall continue

for a period of thirty (30) days after written notice of

such default given to Sublessee or mailed to the last known

address of the Sublessee, or such longer period as may be

necessary in the exercise of due diligence, to cure such

default, or (3) if the Sublessee then owning this Sublease

shall become bankrupt or insolvent, or make an assignment

for the benefit of creditors, or if Sublessee shall file any

debtor's proceedings, or take, or have taken against Sub-

lessee, any proceedings of any kind or character whatsoever

under any provision of the Federal Bankruptcy Code seeking

or have any order or decree rendered against the Sublessee

directing any readjustment, arrangement, postponement, com-

position or reduction of the Sublessee's debts, liabilities

or obligations, or (4) if the Sublessee abandons said

premises or suffers this Sublease or any estate or interest

hereunder to be taken under any writ of execution, then and

in any such event, the Sublessor may at once enter into and

upon the demised premises or any part thereof in the name of

the whole and with or without such entry may at Sublessor's

option cancel and terminate this Sublease and thereupon take

possession of the said premises and all improvements

thereon, and thereby become wholly vested with all rights,

title and interest of the Sublessee therein and may, with

reasonable opportunity first given to Sublessee to remove

all personal property, equipment and trade fixtures from the

18

demised prem , expel and remove from t aid premises the Sublessee or those claiming under the Sublessee and their effects, all without service of notice or resort to any legal process and without being deemed guilty of any trespass or becoming liable for any loss or damage which may be occasioned thereby and without prejudice to any other remedy or right of action which the Sublessor may have for arrears of rent or for any preceding breach or other breach of contract. Such termination may but need not necessarily be made effective by filing an affidavit thereof or a judgment thereof by a court of competent jurisdiction (and mailing a copy thereof to Sublessee by registered mail) in the Bureau of Conveyances of the State of Hawaii at Honolulu, or in the Land Court of the State of Hawaii.

B. <u>Protection of Mortgage</u>. In the event that the Sublessee shall assign this Sublease by way of mortgage as herein set forth, the Sublessor will not terminate this Sublease by reason of the occurrence of any of the events of default hereinabove set forth if the mortgagee within ninety (90) days after the Sublessor has mailed to the mortgagee at its last known address a written notice of intention to terminate the Sublease for such cause, shall either cure such default, if the default can be cured by the payment of money, or if such is not the case, shall undertake in writing to perform and shall thereafter perform all the covenants of this Sublease capable of performance by the mortgagee until such time as this Sublease shall be transferred upon foreclosure pursuant to said mortgage, it being understood that if such default shall be the failure of the Sublessee to promptly discharge or cause to be discharged

19

U.S. Bankruptcy Court - Hawaii  #15-00203   Dkt # 140-2   Filed  04/20/15   Page 51 of 92

any lien, cha   or encumbrance which may    iled against
the demised premises or any improvements thereof junior in
priority to said mortgage, the mortgagee may cure such
default by accomplishing the foreclosure of said mortgage,
and such default shall be deemed to be cured within said
period of ninety (90) days if such foreclosure shall be
accomplished through proceedings or action instituted within
said period and thereafter prosecuted in a diligent and
timely manner.  In the event of such foreclosure the time
for performance of any obligation other than the payment of
money shall be extended by the time reasonably necessary to
complete such performance with due diligence.

    C.  <u>Condemnation.</u>  In case at any time or times
during said term said premises or any part thereof shall be
taken or condemned by any authority having the power of
eminent domain, then and in every such case, the estate and
interest of the Sublessee in the premises so taken or con-
demned shall at once cease and determine, and Sublessee
shall not by reason thereof be entitled to any claim against
Sublessor or others for compensation or indemnity for lease-
hold interest, and all compensation and damages payable for
or on account of any land or improvements thereon shall be
payable to and be the sole property of Sublessor; provided,
however, Sublessee shall have the right to claim and recover
from the condemning authority but not from Sublessor such
compensation as may be separately awarded or recoverable by
Sublessee in Sublessee's own right on account of loss of
leasehold possession, on account of Sublessee's leasehold
improvements unmovable by Sublessee, and on account of any
cost or loss to which Sublessee might be put in removing

20

U.S. Bankruptcy Court - Hawaii  #15-00203   Dkt # 140-2   Filed  04/20/15   Page 52 of 92

Sublessee's f   'res and equipment; provi    further,
however, that in case only part of said premises shall be so
taken or condemned, the rent hereunder payable for the
remaining period for which rent is fixed shall be reduced in
the ratio that the land area of such part bears to the
original land area hereby demised.  Provided, further, that
if more than one-half of the demised land or more than one-
half of the floor area of the building shall be so taken or
condemned, thereby rendering the remaining premises unsuit-
able for the purposes of Sublessee, Sublessee may at Sub-
lessee's option surrender to Sublessor this Sublease and all
interest of Sublessee and any mortgagee in the compensation
and damages payable on account of any improvements on the
remaining premises so surrendered and thereby be relieved of
any further obligations hereunder, such surrender to be made
not later than thirty (30) days after Sublessee loses the
right to possession of the premises so taken or condemned
and in sufficient time for Sublessor to claim from the
condemning authority Sublessor's damages therefor.  Condem-
nation of any leasehold interest in said premises or any
part thereof shall not terminate this Sublease nor excuse
Sublessee from full performance of Sublessee's covenants for
the payment of money or any other obligations hereunder
capable of performance by Sublessee, but in such case Sub-
lessee may claim and recover from the condemning authority
all compensation and damages payable on account of Sub-
lessee's leasehold interest.

        D.   <u>Mortgage</u>.  Sublessee may mortgage this Sub-
lease to any bank, insurance company or other lending insti-
tution as mortgagee without further consent of the

21

Sublessor. Sublessee shall upon execution of any such mortgage forthwith deliver an executed copy thereof to the Sublessor. The mortgagee or its assigns may enforce such mortgage and acquire title to the subleasehold estate in any lawful way, and pending foreclosure of such mortgage, may take possession of and rent the demised premises, and upon foreclosure of such mortgage may without further consent of the Sublessor sell and assign the subleasehold estate by assignment in which the assignee shall expressly assume and agree to observe and perform all the covenants of Sublessee herein contained, and such assignee may make a purchase money mortgage of this Sublease to the assignor or mortgagee, provided that a true copy of said assignment and mortgage shall be delivered promptly to Sublessor. The mortgagee or its assigns of such mortgage shall be liable to perform the obligations imposed on the Sublessee by this Sublease only during the period such person has possession or ownership of said leasehold estate. Nothing contained in any such mortgage shall release or be deemed to relieve the Sublessee from the full and faithful observance and performance of any covenant and condition in this Sublease contained and on Sublessee's part to be observed and performed or from any liability for the nonobservance or nonperformance thereof nor be deemed to constitute a waiver of any rights of the Sublessor hereunder, and the terms, covenants and conditions of this Sublease shall control in case of any conflict between this Sublease and any such mortgage.

    E.   Arbitration.

     1.  That if at any time during the term of this Sublease any dispute, difference or question shall

22

arise concerr   the interpretation, const  tion or effect
of the terms and provisions hereof, or concerning full com-
pliance by the Sublessee with Sublessee's covenants herein
contained, or the rights or liabilities of the parties
hereto, then every such dispute, difference or question
shall at the written request of either Sublessee or Sub-
lessor be submitted to and determined by arbitration in
accordance with the provisions of Chapter 658 of the Hawaii
Revised Statutes, as the same now exists or may hereafter be
amended.  In such event, either party may give to the other
written notice of desire to have an arbitration of the
matter in dispute.  If the parties are unable to agree upon
a single arbitrator within ten (10) days after mailing of
such notice, the party serving the original notice shall
name one of the arbitrators in a written notice, whereupon
the other party shall, within ten (10) days after receipt of
such notice, name a second arbitrator, and the two so chosen
shall appoint a third arbitrator, and they shall constitute
the board of arbitrators.  None of said arbitrators shall be
in the regular employ of either party or be associated in
business with either party.  If either Sublessor or Sub-
lessee shall fail within ten (10) days after receipt of
written notice from the other to appoint an arbitrator, the
arbitrator chosen by the other shall select the second
arbitrator, and the two so chosen shall select a third.  In
the event the two arbitrators so appointed (in either
manner) shall, within ten (10) days after selection of the
second arbitrator, fail to appoint a third arbitrator,
either party, upon at least ten (10) days' written notice to
the other may have the third arbitrator selected or

23

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-2  Filed 04/20/15  Page 55 of 92

appointed by _____ judge of the Circuit Cou___ ___f the judicial circuit in which said premises are located. The decision of such arbitrator, or, if more than one, a majority of the board of three arbitrators, shall be binding upon the Sublessor and Sublessee, subject to vacation or modification as in said Chapter 658 provided, and the expense of such arbitration shall be borne equally by the Sublessor and Sublessee. The arbitrators shall have all the power and duties prescribed by said Chapter 658, as the same now exists or may hereafter be amended, and judgment may be entered upon such award by the Circuit Court of the judicial circuit in which said premises are located as provided in said Chapter 658. Pending such arbitration, full performance of all covenants other than the ones in dispute shall be required.

2. If Sublessor and Sublessee are unable to determine fair market rental value by mutual agreement as provided by this Sublease, either party may request that the fair market rental value be determined by an appraisal conducted by a real property appraiser or panel of real property appraisers, each with at least give (5) years' full-time commercial appraisal experience in Hawaii and with MAI or similar qualifications. Either party may give to the other written notice of desire to have an appraisal of fair market rental value, and the appraiser or appraisers shall be selected in accordance with the provisions of subsection 1 of this section E.

In determining fair market rental value, said appraisers shall consider the buildings and improvements on the property at the time and in light of rentals paid in

24

Honolulu, Hawaii, for properties of like & similar improvements, location, zoning, and current use, but not the highest and best use of the property. In the event fair market rental value is determined by appraisal, the party who shall have requested appraisal shall bear the entire cost of the appraisal, including the cost of the appraiser selected by the other party.

F. <u>Notices</u>. Any notice or demand to Sublessor or Sublessee provided for or permitted by this Sublease may be given sufficiently for all purposes in writing mailed as registered or certified mail, addressed to such party at its post office address herein specified or the last such address designated by such party in writing to the other, or delivered personally within the State of Hawaii to any of Sublessor or Sublessee or any officer of Sublessee if Sublessee is a corporation, as the case may be, and shall be deemed conclusively to have been given on the date of such mailing or personal delivery.

G. <u>Nonwaiver and Definition</u>. Time is of the essence of this agreement. The acceptance of rent by the Sublessor shall not be deemed a waiver by Sublessor of any breach by the Sublessee of any covenant herein contained nor be deemed a waiver of any right to declare and enforce a forfeiture for any such breach; the term "premises" wherever it appears herein includes and shall be deemed or taken to include (except where such meaning would be clearly repugnant to the context) the land hereby demised and all buildings and improvements now or at any time hereafter erected or placed on said land; the term "Sublessor" in these presents shall mean and include the Sublessor above named,

25

his heirs, personal representatives, successors and assigns; and the term "Sublessee" in these presents shall include the Sublessee, its successors and assigns; the singular shall mean the plural, and any gender shall mean the other, as the context may require.

H. Consents. Wherever consents are required of Sublessor, such consents shall not be unreasonably withheld.

I. Conveyance Tax. The Sublessee shall pay any and all conveyance taxes imposed by the State of Hawaii and any other governmental agency arising out of the execution of this Sublease.

J. Master Lease. This Sublease shall be subordinate and subject to all of the terms and conditions of that certain unrecorded indenture of lease dated August 24, 1982, made by and between Honolulu Limited, a Hawaii corporation, as Lessor, and Sublessor herein, as Lessee, the short form of which has been filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 1134417 and noted on Transfer Certificates of Title Nos. 145,205, 217,232 and 217,231.

IN WITNESS WHEREOF, the Sublessor and Sublessee herein have caused these presents to be executed the day and year first above written.

POMARE, LTD.

By _____
Its _____

By _____
Its _____ Sublessee

JAMES S. ROMIG
Trustee Aforesaid
                    Sublessor

26

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-2  Filed 04/20/15  Page 58 of 92

KNOW ALL MEN BY THESE PRESENTS:

   That <u>HONOLULU LIMITED</u>, a Hawaii corporation, as Lessor under that certain unrecorded Lease dated August 24, 1982 to James Stewart Romig, unmarried, as Lessee, the short form of which is dated August 24, 1982, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 1134417 and noted on Transfer Certificates of Title Nos. 145,205, 217,231 and 217,232, such Lease having been assigned by mesne assignment to James S. Romig, as Trustee of the James S. Romig Revocable Living Trust dated August 14, 1980, by Assignment of Lease dated ___March 16___, 1983, filed as aforesaid as Document No. __1164853__, and noted on said Transfer Certificates of Title, DOES HEREBY CONSENT to the execution and delivery of that certain unrecorded Sublease dated ___March 17___, 1983, by and between James S. Romig, as Trustee of the James S. Romig Revocable Living Trust dated August 14, 1980, as Sublessor, and Pomare, Ltd., a Hawaii corporation, as Sublessee, the short form of which is dated ___March 17___, 1983, filed as aforesaid as Document No. __1164854__, and noted on said Transfer Certificates of Title; provided that this consent shall not authorize nor be deemed to authorize any other or further sublease, assignment or other disposition of said Lease except as in said Lease may be provided; and should there be any conflict between the terms of said Lease and the terms of said Sublease, the terms of said Lease shall control.

IN WITNESS WHEREOF, said Lessor has executed these presents this 24th day of _MARCH_, 1983.

HONOLULU LIMITED

Approved as to Form

By _____

By _____
Its _Vice President_

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-2  Filed  04/20/15  Page 60 of 92

SUBLEASE

700 NORTH NIMITZ HIGHWAY

FIRST AMENDMENT


This First Amendment to the Sublease dated March 17, 1983 between **James S. Romig**, as Trustee under that certain unrecorded Revocable Living Trust Agreement dated August 15, 1980, made by James S. Romig, as Settlor, whose mailing address is The Airport Center 3049 Ualena Street, Suite 1009 Honolulu, Hawaii 96819, herein after called the "Sublessor" and **Pomare, Ltd.** a Hawaii corporation, hereinafter called the "Sublessee", amends the above Sublease as follows:

1.    The Sublease term shall be extended for an additional ten (10) years, and shall terminate September 30, 2013.

2.    On page 5 new items (i) and (j) shall be added, as follows;

"(i) For and during the next five (5) years, the annual rental shall be increased by Twenty Five Percent (25%) of the annual rental for the next preceding year; **OR** be equal to the fair market rental value as determined by mutual agreement or, if no agreement, by appraisal as provided in section E(2) of this Sublease, **WHICHEVER IS HIGHER.**

(j) For and during the next five (5) years, terminating as of September 30, 2013, the annual rental shall be increased by Twenty Five Percent (25%) of the annual rental for the next preceding year; **OR** be equal to the fair market rental value as determined by mutual agreement or, if no agreement, by appraisal as provided in section E(2) of this Sublease, **WHICHEVER IS HIGHER."**


Except as provided for herein, all of the terms and conditions of the above referenced Sublease remain in full force and effect.

Executed at Honolulu, Hawaii on the ___ day of _____, 1994.

[handwritten annotations, left margin:]
10/1/03 -
9/30/08

10/1/08 -
9/30/13

[handwritten signature]

JAMES S. ROMIG
Trustee Aforesaid
                                                    "Sublessor"

POMARE, LTD.

By [signature]
Its  CEO

By _____
Its
                                                    "Sublessee"

[handwritten calculations, lower left:]
MONTHLY RENT   0.00 *

10/1/03-9/30/08
1ST 5YRS   97,655.25 *
              1.25=
           122,070.31*

10/1/08 - 9/30/13
2ND        122,070.31 *
5YRS          1.25=
           152,587.89*

U.S. Bankruptcy Court - Hawaii   #15-00203   Dkt # 140-2   Filed  04/20/15   Page 61 of 92

SUBLEASE

<u>700 NORTH NIMITZ HIGHWAY</u>

<u>FIRST AMENDMENT</u>


This First Amendment to the Sublease dated March 17, 1983 between **James S. Romig**, as Trustee under that certain unrecorded Revocable Living Trust Agreement dated August 15, 1980, made by James S. Romig, as Settlor, whose mailing address is 3885 Round Top Drive, Honolulu, Hawaii 96822, hereinafter called the "Sublessor" and **Pomare, Ltd.** a Hawaii Corporation, whose mailing address is 700 North Nimitz Highway, Honolulu, Hawaii 96817, hereinafter called the "Sublessee", amends the above sublease as follows:


1.   Added to the Sublease term shall be an Option to Extend for the period of an additional ten (10) years. — 2013

2.   All Terms and Conditions will be mutually agreed upon within sixty (60) days from the date of notice to exercise the option.

Except as provided for herein, all of the terms and conditions of the above referenced Sublease remain in full force and effect.

Executed at Honolulu, Hawaii on the <u>2nd</u> day of <u>October</u>, 1995.


_____
James S. Romig
Trustee Aforesaid

                                   "Sublessor"

POMARE, LTD.

By_____
  Its

By_____
  Its

                                   "Sublessee"

## SUBLEASE

## 700 NORTH NIMITZ HIGHWAY

## FIRST AMENDMENT

This First Amendment to the Sublease dated March 17, 1983 between **James S. Romig**, as Trustee under that certain unrecorded Revocable Living Trust Agreement dated August 15, 1980, made by James S. Romig, as Settlor, whose mailing address is The Airport Center 3049 Ualena Street, Suite 1009 Honolulu, Hawaii 96819, herein after called the "Sublessor" and **Pomare, Ltd.** a Hawaii corporation, hereinafter called the "Sublessee", amends the above Sublease as follows:

1.    The Sublease term shall be extended for an additional ten (10) years, and shall terminate September 30, 2013.

2.    On page 5 new items (i) and (j) shall be added, as follows;

"(i) For and during the next five (5) years, the annual rental shall be increased by Twenty Five Percent (25%) of the annual rental for the next preceding year; OR be equal to the fair market rental value as determined by mutual agreement or, if no agreement, by appraisal as provided in section E(2) of this Sublease, **WHICHEVER IS HIGHER.**

(j) For and during the next five (5) years, terminating as of September 30, 2013, the annual rental shall be increased by Twenty Five Percent (25%) of the annual rental for the next preceding year; OR be equal to the fair market rental value as determined by mutual agreement or, if no agreement, by appraisal as provided in section E(2) of this Sublease, **WHICHEVER IS HIGHER.**"

Except as provided for herein, all of the terms and conditions of the above referenced Sublease remain in full force and effect.

Executed at Honolulu, Hawaii on the ___ day of _____, 1994.

_____
JAMES S. ROMIG
Trustee Aforesaid
                                    "Sublessor"

POMARE, LTD.

By _____
Its _____

By _____
Its
                                    "Sublessee"

U.S. Bankruptcy Court - Hawaii   #15-00203   Dkt # 140-2   Filed  04/20/15   Page 63 of 92

SUBLEASE

700 NORTH NIMITZ HIGHWAY

FIRST AMENDMENT


This First Amendment to the Sublease dated March 17, 1983 between **James S. Romig**, as Trustee under that certain unrecorded Revocable Living Trust Agreement dated August 15, 1980, made by James S. Romig, as Settlor, whose mailing address is 3885 Round Top Drive, Honolulu, Hawaii 96822, hereinafter called the "Sublessor" and **Pomare, Ltd.** a Hawaii Corporation, whose mailing address is 700 North Nimitz Highway, Honolulu, Hawaii 96817, hereinafter called the "Sublessee", amends the above sublease as follows:


1.    Added to the Sublease term shall be an Option to Extend for the period of an additional ten (10) years. — 2012

2.    All Terms and Conditions will be mutually agreed upon within sixty (60) days from the date of notice to exercise the option.

Except as provided for herein, all of the terms and conditions of the above referenced Sublease remain in full force and effect.

Executed at Honolulu, Hawaii on the 2nd day of October , 1995.


_____
James S. Romig
Trustee Aforesaid
                                    "Sublessor"

POMARE, LTD.

By_____
  Its
By_____
  Its
                                    "Sublessee"



LAND COURT SYSTEM      REGULAR SYSTEM

AFTER RECORDATION, RETURN BY MAIL ( )    PICKUP ( )

339733 v1

## ASSIGNMENT OF LEASE

THIS INDENTURE is made this _11TH_ day of ___July___, 2003, by and between **JAMES S. ROMIG,** as Trustee of the James S. Romig Revocable Living Trust dated August 15, 1980, as amended and restated by unrecorded Third Amendment to and Complete Restatement of James S. Romig Revocable Living Trust dated July 20, 1989, a Short Form of which, dated December 28, 1993, was filed as Land Court Document No. 2104607, whose address is 700 North Nimitz Highway, Honolulu, Hawaii 96817, hereinafter called the "Assignor", and **POMARE, LTD.,** a Hawaii corporation, whose address is 700 North Nimitz Highway, Honolulu, Hawaii 96817, hereinafter called the "Assignee";

W I T N E S S E T H :

That the Assignor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to the Assignor paid by the Assignee, receipt whereof is hereby acknowledged, and of the covenants and agreements of the Assignee hereinafter contained and on the part of the Assignee to be faithfully kept and performed, does hereby sell, assign, transfer, set over and deliver unto the Assignee, effective as of July 1, 2003 (the "Effective Date"), all of the leasehold estate and interest created by that certain Lease (hereinafter called the "Lease") more fully described in Exhibit "A" attached hereto and made a part hereof by reference, subject to the encumbrances noted therein.

TO HAVE AND TO HOLD the same, together with all buildings, improvements, rights, easements, privileges and appurtenances thereunto belonging or appertaining or held and enjoyed in connection therewith unto the Assignee, and its successors and assigns, for and during the full unexpired term of the Lease, subject to any encumbrances hereinabove or hereinafter mentioned, in "AS IS" condition, and except as hereafter expressly set forth as to title, without any warranties, whether express or implied as to the physical condition of the demised land, buildings and improvements, including, without limitation, any warranty of habitability, warranty of fitness for a particular use or purpose, any warranties regarding the soil compaction of the land or any warranty as to whether the land, building and improvements comply with applicable zoning, density, building, environmental, hazardous substance, hazardous materials and/or hazardous waste laws, ordinances or regulations.

SUBJECT, HOWEVER, to the payment of the rents reserved by the Lease and subject also to the observance and performance by the Assignee of all of the covenants and conditions contained in the Lease, which, according to the terms and provisions thereof, are or ought to be observed and performed by the Lessee therein named.

AND the Assignor does hereby covenant and agree to and with the Assignee as follows: That the Assignor is the lawful owner of the leasehold estate and interest created under the Lease; that the Lease is in full force and effect and not in default; that the leasehold estate and interest is free and clear of and from all encumbrances made or suffered by the Assignor other than those hereinabove or hereinafter mentioned, and except for assessments for real property taxes not yet by law required to be paid; that the Assignor has good right to sell and assign the leasehold estate and interests; that the Assignor will WARRANT AND DEFEND the title to the leasehold estate and interest created by the Lease unto the Assignee against the lawful claims and demands of all persons claiming by, through or under the Assignor, except as mentioned hereinabove or hereinafter.

AND the Assignee hereby acknowledges, verifies and confirms that the Assignee has reviewed and fully understands all the material terms, covenants and conditions of the Lease, and in consideration of the premises, does hereby promise, covenant and agree to and with the Assignor, and to and with the Lessor under the Lease, that the Assignee, effective as and from the Effective Date, will pay the rents thereby reserved as and when the same become due and payable pursuant to the provisions of the Lease and will also faithfully observe and perform all of the covenants and conditions contained in the Lease which are or ought to be observed and performed by the Lessee therein named, and will at all times hereafter indemnify and save the Assignor harmless from and against the nonpayment of the rents accruing on and after the Effective Date and the nonobservance of the covenants and conditions contained in the Lease to be performed on and after the Effective Date.

IT IS MUTUALLY AGREED, that the terms "Assignor", "Assignee", "Lessor" and "Lessee" as and when used hereinabove or hereinbelow shall mean and include the masculine or feminine, the singular or plural number, individuals, associations, trustees, corporations or partnerships, and their and each of their respective successors in interest, heirs, personal representatives, executors, administrators and permitted assigns, according to the context thereof;

2

and that if these presents shall be signed by two or more assignors or by two or more assignees, all covenants of such parties shall be and for all purposes deemed to be joint and several.

The parties hereto agree that this instrument may be executed in counterparts, each of which shall be deemed an original, and said counterparts shall together constitute one and the same instrument, binding all of the parties, hereto, notwithstanding all of the parties are not signatory to the original of the same counterparts. For all purposes, including, without limitation, recordation, filing and delivery of this instrument, duplicate unexecuted and unacknowledged pages of the counterparts may be discarded and the remaining pages assembled as one document.

IN WITNESS WHEREOF, the Assignor and the Assignee have executed these presents on the day and year first above written.

_____
JAMES S. ROMIG, Trustee

                                        Assignor


POMARE, LTD., a Hawaii corporation

By _____
Name: Paul I. deVille
Its CEO + Pres.


By _____
Name:
Its

                                        Assignee

3

STATE OF HAWAII )
) SS:
CITY AND COUNTY OF HONOLULU )

On this 15th day of July , 2003, before me appeared
Paul I. deVille and
to me personally known, who, being by me duly sworn did say that he is the
President & Chief Executive Officer and
respectively, of **POMARE, LTD.**, a Hawaii corporation; that the foregoing instrument was signed
in the name and on behalf of said corporation by authority of its Board of Directors; and said
officers acknowledged that they executed said instrument as the free act and deed of corporation.

LS

Name of Notary: Charlotte M. Higashi
Notary Public, State of Hawaii

My Commission expires: 10-31-04

4

STATE OF HAWAII                      )
                                      ) SS:
CITY AND COUNTY OF HONOLULU )

On this _15th_ day of _July_____, 2003, before me appeared **JAMES S. ROMIG,** to me personally known, who, being by me duly sworn did say that he is the Trustee of the James S. Romig Revocable Living Trust dated August 15, 1980, as amended, and acknowledged that he executed the foregoing instrument as his free act and deed as said Trustee.

Name of Notary: _____
Notary Public, State of Hawaii

My Commission expires: _10-31-04_____

5

# EXHIBIT "A"

All of the right, title and interest of the Assignor, as Lessee under:

UNRECORDED LEASE

| | | |
|---|---|---|
| LESSOR | : | HONOLULU LIMITED, a Hawaii corporation |
| LESSEE | : | JAMES STEWART ROMIG, unmarried |
| DATED | : | -------- |
| TERM | : | approximately 56 years commencing on August 24, 1982 and terminating 55 years and 90 days after the issuance of a final certificate of occupancy or the equivalent for the improvements to be constructed on the premises by the Lessor |

A Short Form Sublease is dated August 24, 1982, filed as Land Court Document No. 1134417.

THE LESSEE'S INTEREST ASSIGNED

| | | |
|---|---|---|
| ASSIGNOR | : | JAMES STEWART ROMIG, unmarried |
| ASSIGNEE | : | JAMES S. ROMIG, as Trustee of the James S. Romig Revocable Living Trust dated August 15, 1980, with powers to sell, mortgage, lease, etc |
| DATED | : | March 16, 1983 |
| FILED | : | Land Court Document No. 1164853 |
| CONSENT | : | Given by HONOLULU LIMITED, a Hawaii corporation, by instrument dated March 24, 1983, filed as Land Court Document No. 1167957 |

Said Trust Agreement was amended and restated by unrecorded Third Amendment to and Complete Restatement of James S. Romig Revocable Living Trust dated July 20, 1989.

A Short Form Trust Agreement of the James S. Romig Revocable Living Trust Agreement incorporating all of the foregoing is dated December 28, 1993, filed as Land Court Document No. 2104607. (Not noted on Transfer Certificate(s) of Title referred to herein.)

Said Lease is subject to the following:

(A)  MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT

|            |   |                                                                                                                     |
|------------|---|---------------------------------------------------------------------------------------------------------------------|
| MORTGAGOR  | : | JAMES S. ROMIG, as Trustee under the James S. Romig Revocable Living Trust Agreement dated August 15, 1980, made by James S. Romig, as Settlor, as amended |
| MORTGAGEE  | : | BANK OF HAWAII, a Hawaii corporation                                                                                 |
| DATED      | : | August 24, 1989                                                                                                     |
| FILED      | : | Land Court Document No. 1665141                                                                                     |
| AMOUNT     | : | Line of Credit in the sum of $5,000,000.00                                                                          |

By ACKNOWLEDGMENT OF SUBORDINATION dated February 16, 1994, filed as Land Court Document No. 2123114, recorded as Document No. 94-035091, said above Mortgage was subordinated to the lien of that certain Mortgage in the amount of $660,220.76.

B.  ASSIGNMENT OF LESSOR'S INTEREST IN LEASES dated August 24, 1989, recorded in Liber 23613 at Page 227, made by JAMES S. ROMIG, as Trustee under the James S. Romig Revocable Living Trust Agreement dated August 15, 1980, as amended, to BANK OF HAWAII, a Hawaii corporation, assigning all of the right, title and interest in, to and under each and all of the leases, now or hereafter in effect covering all or any part of the property described herein, etc., as security for the repayment of that certain loan in the sum of $5,000,000.00. (Not noted on Transfer Certificate of Title referred to herein.)

By ACKNOWLEDGMENT OF SUBORDINATION dated February 16, 1994, filed as Land Court Document No. 2123114, recorded as Document No. 94-035091, said above Assignment of Lessor's Interest in Leases was subordinated to the lien of that certain Mortgage in the amount of $660,220.76.

C.  MORTGAGE

|            |   |                                                                                                                     |
|------------|---|---------------------------------------------------------------------------------------------------------------------|
| MORTGAGOR  | : | JAMES S. ROMIG, as Trustee under the James S. Romig Revocable Living Trust Agreement dated August 15, 1980, as amended |
| MORTGAGEE  | : | 3900 CORP., a Maryland corporation                                                                                  |
| DATED      | : | February 7, 1994                                                                                                    |
| FILED      | : | Land Court Document No. 2123112                                                                                     |
| AMOUNT     | : | $660,220.76                                                                                                         |
| CONSENT    | : | Given by HONOLULU LIMITED, a Hawaii corporation, by instrument dated February 22, 1994, filed as Land Court Document No. 2123113 |

Said Lease demising the following described premises:

All of those certain parcels of land situate at Kaholaloa, Honolulu, City and County of Honolulu, State of Hawaii, described as follows:

2

FIRST:

LOT C, area 1.393 acres, more or less, as shown on Map 1, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No 1056 of Oahu Railway and Land Company

Together with right of way over all roads now existing on Lots A-1, A-2-A, A-2-B, A-3-B, A-3-C, A-3-D, 10, F-2 and 6, as reserved in Land Court Document No. 282601

Being land(s) described in Transfer Certificate of Title No. 145,205 issued to Honolulu Limited, a Hawaii corporation.

SECOND:

LOTS: 30-B-1, area 2,808 square feet, and
30-B-2, area 11,474 square feet, more or less, as shown on Map 9, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1758 (amended) of Oahu Railway and Land Company.

Being land(s) described in Transfer Certificate of Title No. 217,231 issued to Honolulu Limited, a Hawaii corporation.

THIRD:

LOTS: D-1, area 2,140 square feet, and
D-2, area 5,140 square feet, more or less, as shown on Map 31, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1056 of Oahu Railway and Land Company.

Being land(s) described in Transfer Certificate of Title No. 270,030 issued to Honolulu Limited, a Hawaii corporation.

SUBJECT, HOWEVER, as follows:

1. Real Property Taxes for the Fiscal Year July 1, 2003 – June 30, 2004.

1. AS TO PARCEL FIRST:

(A) The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in that certain pipe line license or agreement with the UNION OIL COMPANY OF CALIFORNIA, by AGREEMENT dated January 25, 1923, subject to termination as therein provided.

3

(B)    NOTICE OF PENDENCY OF ACTION, L. No. 18604, in favor of the STATE OF HAWAII, to acquire title to portions of Lot C, dated October 23, 1947, filed as Land Court Document No. 96035.

(C)    NOTICE OF PENDENCY OF ACTION, L. No. 20196, in favor of the STATE OF HAWAII, to acquire abutter's rights of vehicle access appurtenant to Lot C, dated September 2, 1949, filed as Land Court Document No. 112472.

Note:    Final Order of Condemnation, filed March 16, 1953, in favor of the Territory of Hawaii (now State of Hawaii). (Not noted on Transfer Certificate of Title No. 145,205.)

(D)    Restriction of access rights, as shown on Map 16, as set forth by Land Court Order No. 11868, filed March 19, 1953.

(E)    Easement "14" for water pipeline purposes, as shown on Map 32, as set forth by Land Court Order No. 66634, filed July 25, 1983.

(F)    GRANT to CITY AND COUNTY OF HONOLULU, dated November 4, 1983, filed as Land Court Document No. 1206066; granting an easement to maintain, operate, replace and remove an underground water meter and other appurtenances, etc.

3.    AS TO PARCEL SECOND:

(A)    Easement "18" (10 feet wide) for pipeline purposes in favor of Honolulu Gas Company, Limited, over and across Lot 30-B-2, as shown on Maps 2 and 9 of Land Court Application 1758.

(B)    Easement "19" over and across Lot 30-B-2, as shown on Maps 2 and 9 of Land Court Application 1758.

(C)    Easement "20" over and across Lot 30-B-1, as shown on Maps 2 and 9 of Land Court Application 1758.

(D)    Easement "21" (10 feet wide) for oil pipeline purposes in favor of Standard Oil Company of California, situate over and across Lot 30-B-1, as shown on Maps 2 and 9 of Land Court Application 1758.

(E)    Restriction of access rights in favor of the State of Hawaii, pursuant to two Final Orders of Condemnation, Law No. 20196, the first being recorded in the Bureau of Conveyances of the State of Hawaii in Liber 2412 at Page 93, and the second being unrecorded, the portions affected thereby being shown on said Maps 2 and 9.

4

(F)    Possible future restriction of access rights as set forth in the Petition and Lis Pendens of Law 21290, Territory of Hawaii (now State of Hawaii) vs. Inter-Island Steam Navigation Company, Limited, the portions affected thereby being shown on said Maps 2 and 9: nothing herein to be deemed to restrict access or to affect the rights of the Oahu Railway and Land Company to compensation for such restriction, such portion being shown on said Maps 2 and 9 solely for future convenience in description.

4.    AS TO PARCEL THIRD:

(A)    The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in that certain pipe line license or agreement with the UNION OIL COMPANY OF CALIFORNIA, by AGREEMENT dated January 25, 1923, subject to termination as therein provided.

(B)    NOTICE OF PENDENCY OF ACTION, L. No. 18604, in favor of the STATE OF HAWAII, to acquire title to portions of Lot C, dated October 23, 1947, filed as Land Court Document No. 96035.

5.    Encroachments, or any other facts which a correct boundary and improvement survey will disclose

5



LAND COURT SYSTEM       REGULAR SYSTEM

AFTER RECORDATION, RETURN BY MAIL ( )    PICKUP ( )

339753.v1

## CANCELLATION OF SUBLEASE

THIS AGREEMENT is made this _11TH_ day of _July_____, 2003, by and between **JAMES S. ROMIG**, as Trustee of the James S. Romig Revocable Living Trust dated August 15, 1980, as amended and restated by unrecorded Third Amendment to and Complete Restatement of James S. Romig Revocable Living Trust dated July 20, 1989, a Short Form of which, dated December 28, 1993, was filed as Land Court Document No. 2104607, whose address is 700 North Nimitz Highway, Honolulu, Hawaii 96817, hereinafter called the "Sublessor", and **POMARE, LTD.**, a Hawaii corporation, whose address is 700 North Nimitz Highway, Honolulu, Hawaii 96817, hereinafter called the "Sublessee";

W I T N E S S E T H :

WHEREAS, by that certain unrecorded Sublease, dated March 17, 1983, but commencing August 24, 1982 and terminating 20 years and 90 days after the issuance of a final certificate of occupancy or the equivalent for the improvements to be provided on the premises by the Sublessor, a Short Form of which Sublease, dated March 17, 1983, was filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 1164854 and noted on Transfer Certificates of Title Nos. 145,205 and 270,030, the Sublessor did sublease and demise unto the Sublessee certain premises situated at Kaholaloa, Honolulu, City and County of Honolulu, State of Hawaii, as more particularly described in said Sublease, said Sublease, as amended, being hereinafter called the "Sublease"; and

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-2  Filed 04/20/15  Page 75 of 92

WHEREAS, the parties hereto have mutually agreed to a cancellation of the Sublease and the surrender by the Sublessee to the Sublessor of the premises thereby demised, said surrender to be effective as of July 1, 2003 (the "Effective Date");

NOW, THEREFORE, the Sublessor and the Sublessee do hereby mutually cancel and terminate the Sublease as of the Effective Date, and the Sublessee, in consideration of the premises and the releases hereinafter set forth, does hereby yield up and surrender to the Sublessor the premises demised by the Sublease, and does hereby release and quitclaim unto the Sublessor, his successors, successors in trust and assigns, forever, all of the right, title and interest of the Sublessee in and to the Sublease and the premises thereby demised.

AND the Sublessor, in consideration of the premises, does hereby release and discharge the Sublessee of and from any and all obligations under the Sublease, whether now existing or hereafter arising and pertaining to the period after the Effective Date.

IN WITNESS WHEREOF, the parties hereto have executed these presents on the day and year first above written.

_____
JAMES S. ROMIG, Trustee

                                                                    Sublessor


POMARE, LTD., a Hawaii corporation

By _____
Name: Paul T. deVille
Its CEO + Pres.


By _____
Name:
Its

                                                                    Sublessee


2

STATE OF HAWAII            )
                          ) SS:
CITY AND COUNTY OF HONOLULU )

_Paul_ On this _15th_ day of _July_ _____, 2003, before me appeared
_I. deVille_ _____ and _____
to me personally known, who, being by me duly sworn did say that ~~they are~~ _he is_ the
_President & Chief Executive Officer_ _____ and _____,
respectively, of **POMARE, LTD.**, a Hawaii corporation; that the foregoing instrument was signed
in the name and on behalf of said corporation by authority of its Board of Directors; and said
officers acknowledged that they executed said instrument as the free act and deed of corporation.

Name of Notary: _____
Notary Public, State of Hawaii

My Commission expires: _10·31·04_ _____

3

STATE OF HAWAII                   )
                                        ) SS:

CITY AND COUNTY OF HONOLULU )

        On this __15th__ day of __July_____, 2003, before me appeared **JAMES S.**
**ROMIG,** to me personally known, who, being by me duly sworn did say that he is the Trustee of
the James S Romig Revocable Living Trust dated August 15, 1980, as amended, and acknowledged
that he executed the foregoing instrument as his free act and deed as said Trustee.

                                                                LS

                                  _____
                                  Name of Notary: _____
                                  Notary Public, State of Hawaii

                                  My Commission expires: _10-31-04_____

4

U.S. Bankruptcy Court - Hawaii   #15-00203   Dkt # 140-2   Filed  04/20/15   Page 78 of 92

# HONOLULU LIMITED

3660 WAIALAE AVENUE, SUITE 400
HONOLULU, HAWAII 96816-3260
TELEPHONE: (808) 924-1000
FACSIMILE: (808) 922-3975

January 31, 2008

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. John Reed
President and CEO
Pomare, Ltd. dba Hilo Hatties
700 N. Nimitz Highway
Honolulu, Hawaii 96813

Re:    Lease dated August 24, 1982, by and between Honolulu Limited (Lessor), and James Stewart
Romig (Lessee); subsequently assigned to Pomare, Ltd. dba Hilo Hattie (Successor Lessee);
as amended; for the demised premises located at 700 N. Nimitz Highway, Honolulu, Hawaii,
TMK: 1-5-013-003, 004 and 018; consisting of approximately 82,241 square feet.

Dear Mr. Reed:

In reference to your letter dated January 28, 2008, this letter is to notify you in writing that Honolulu
Limited hereby agrees to amend the minimum monthly rent for the period commencing January 1,
2008 to and including June 30, 2013 for the above mentioned Lease as follows:

1.    **Minimum Rent.**

    a.    For the period commencing January 1, 2008 to and including June 30, 2008,
the minimum monthly rent shall be $43,298.20 per month.

    b.    For the period commencing July 1, 2008 to and including December 31,
2008, the minimum monthly rent shall be $50,000.00 per month.

    c.    For the period commencing January 1, 2009 to and including June 30, 2009,
the minimum monthly rent shall be $150,000.00 per month.

    d.    For the period commencing July 1, 2009 to and including June 30, 2013, the
minimum monthly rent shall be $100,000.00 per month.

2.    All other terms and conditions of the above mentioned Lease, as amended, with the
exception of the minimum rent set forth herein above, shall remain the same and
shall be in full force and effect.

U.S. Bankruptcy Court - Hawaii   #15-00203   Dkt # 140-2   Filed 04/20/15   Page 79 of 92

Mr. John Reed
Pomare, Ltd. dba Hilo Hatties
January 31, 2008
Page 2

If you agree with the above as stated, please acknowledge the same in the space provided below and return all three (3) signed letters to **Honolulu Limited, 3660 Waialae Avenue, Suite 400, Honolulu, Hawaii 96816, by February 14, 2008.** An executed copy of this letter will be mailed back to you for your records. Kindly be advised that if this letter is not received by the Lessor by **February 14, 2008,** then this letter shall be null and void.

Should you have any questions, please call Jayna Osada, Project and Leasing Manager at 732-9154.

Sincerely,

HONOLULU LIMITED

Alvin Awaya
Vice President

Agreed to and accepted this
_4_ day of _Feb._, 2008.

POMARE, LTD.
DBA HILO HATTIE

By _John Reed_
Print Name:
Its: _CEO_

By_____
Print Name:
Its:

AA:jso

## AMENDMENT OF SUBLEASE

THIS AMENDMENT is made this __ day of _____ DEC 0 5 2008 _____ 2008 by and between HONOLULU, LIMITED, a Maryland corporation, with its address at 3660 Waialae Avenue, Suite 400, Honolulu, Hawaii 96816 (the "Lessor") and POMARE, LTD., a Hawaii corporation with its address at 700 Nimitz Highway, Honolulu, Hawaii 9681 (the "Lessee").

## RECITALS

A.       Lessor and the predecessor in interest to Lessee entered into that certain Indenture of Sublease dated August 24, 1982 covering premises located at 700 Nimitz Highway, Honolulu, Hawaii, as amended by First Amendment dated March 17, 1983, Second Amendment of Lease dated October 11, 2001 and Third Amendment dated January 31, 2008 (the "Sublease").

B.       Lessor and Lessee wish to amend the Sublease on the terms set forth herein.

## AGREEMENT

1.       Deferred Rent. Rent under the Sublease commencing January 1, 2009, and continuing through the last day of the calendar month in which Lessee emerges from the bankruptcy proceedings in Case No. 08-01488 in the Bankruptcy Court of the District of Hawaii (the "Deferred Rent Period"), shall be FIFTY THOUSAND AND NO/1OO DOLLARS ($50,000.00) per month, payable as required by the Sublease.

2.       Additional Rent. Commencing on the first day of the first calendar month following the end of the Deferred Rent Period, and continuing for the number of months during the Deferred Rent Period plus six months (the "Additional Rent Period"), rent under the Sublease shall be ONE HUNDRED FIFTY THOUSAND AND NO/l00 DOLLARS ($150,000.00) per month, payable as required by the Sublease.

3.       Rent Following Additional Rent Period. Commencing on the first day of the first calendar month following the end of the Additional Rent Period, and continuing through June 30, 2013 rent under the Sublease shall be ONE HUNDRED THOUSAND AND NO/l00 DOLLARS ($100,000.00) per month payable as required by the Sublease.

4.       No Other Amendments. Except as set forth herein, the Sublease remains unmodified and in full force and effect.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Amendment as of the date first written above.

HONOLULU, LIMITED                              POMARE, LTD.

By _____              By _____ 11/26/08
Alvin Awaya                                             Mark J. Storfer
Its Vice President                                      Its Secretary / Treasurer

195770.1

# FIFTH AMENDMENT OF SUBLEASE

THIS AMENDMENT is made this __day of_____ JAN 0 9 2009_____, 2008 by and between HONOLULU, LIMITED, a Maryland corporation, with its address at 3660 Waialae Avenue, Suite 400, Honolulu, Hawaii 96816 (the "Lessor") and POMARE, LTD., a Hawaii corporation with its address at 700 North Nimitz Highway, Honolulu, Hawaii 96817 (the "Lessee").

## RECITALS

A.    Lessor and the predecessor in interest to Lessee entered into that certain Indenture of Sublease dated August 24, 1982 covering premises located at 700 North Nimitz Highway, Honolulu, Hawaii, as amended by First Amendment dated March 17, 1983, as amended by First Amendment dated -----, 1994, Second Amendment of Lease dated October 11, 2001, Third Amendment dated January 31, 2008 and (Fourth) Amendment of Sublease dated December 5, 2008 (the "Sublease").

B.    Lessor and Lessee wish to amend the Sublease on the terms set forth herein.

## AGREEMENT

1.    Deferred Rent. All rent and general excise tax thereon due under the Sublease during the period January 1, 2009 through September 30, 2009 ("Deferred Rent") shall be deferred and paid in accordance with Section 2 below.

2.    Payment of Deferred Rent. Deferred Rent is an administrative claim in the bankruptcy proceeding in Case No. 08-01488 in the Bankruptcy Court of the District of Hawaii (the "Bankruptcy Proceeding"). Deferred Rent shall be paid at the times and in the manner specified in the Plan of Reorganization of Lessee in the Bankruptcy Proceeding.

3.    No Other Amendments. Except as set forth herein, the Sublease remains unmodified and in full force and effect.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Amendment as of the date first written above.

HONOLULU, LIMITED                           POMARE, LTD.


By_____               By_____
   Alvin Awaya                                  John D. Scott
   Its Executive Vice President                 Its President


197917.1

U.S. Bankruptcy Court - Hawaii  #15-00203   Dkt # 140-2   Filed  04/20/15   Page 82 of 92



THE STORE OF
**HAWAI'I**
HiloHattie.com



JAN 07 2009

*A Division of Pomare, Ltd*
700 North Nimitz Highway
Honolulu, HI 96817
Phone: (808)524-6526
Fax: (808)356-1510

**Mark J. Storfer**
Secretary / Treasurer

January 6, 2009

Mr. Alvin Awaya
Trustee
The Harry & Jeanette Weinberg Foundation, Inc.
3660 Waialae Avenue, Suite 400
Honolulu, HI 96816-3260

Dear Alvin:

Please find enclosed three lease amendments reflecting the terms changes we discussed at our meeting on December 15, 2008:

- Nimitz
- Lahaina
- Lihue

If the amendments meet with your approval, please sign and return one original set in the enclosed postage-paid envelope.

Thank you once again for your continued support as we restructure Pomare, Ltd. in this challenging environment.

Sincerely yours,

Mark J. Storfer

MJS/c
copy: Sid Tsutsui
Debra Nakamura
Attachments to All

Hawaii • California

# AGREEMENT TO DEFER RENT
## (700 NORTH NIMITZ HIGHWAY, HONOLULU, OAHU)

**THIS AGREEMENT TO DEFER RENT** (this "**Agreement**"), made and executed this _____ day of _____ DEC 1 5 2010 _____, 2010 by and between HONOLULU, LIMITED, a Maryland corporation, whose principal place of business and mailing address is 3660 Waialae Avenue, Suite 400, Honolulu, Hawaii 96816, hereinafter called "**Landlord**", and POMARE, LTD., a Hawaii corporation, whose principal place of business and mailing address is 700 North Nimitz Highway, Honolulu, Hawaii 96817, hereinafter called "**Tenant**",

## W I T N E S S E T H:

**WHEREAS**, Landlord and predecessor in interest to Tenant entered into that certain Indenture of Lease dated August 24, 1982 covering premises located at 700 North Nimitz Highway, Honolulu, Hawaii, as amended by First Amendment dated October 4, 2001, Second Amendment dated June 26, 2003, Third Amendment dated January 31, 2008, [Fourth] Amendment dated December 5, 2008, Fifth Amendment dated January 9, 2009 and Sixth Amendment dated October 7, 2009 (collectively, the "**Lease**");

**WHEREAS**, Tenant has requested that Landlord defer all rent due under the Lease during the period beginning November 1, 2010 and continuing through January 31, 2011; and

**WHEREAS**, Landlord is prepared to accommodate Tenant's request to defer rent;

**NOW, THEREFORE, IT IS HEREBY AGREED**, by and between Landlord and Tenant, that:

1. All rent and general excise tax thereon due under the Lease during the period beginning November 1, 2010 and continuing through January 31, 2011 is deferred and shall be paid in accordance with section 2 below

2. Tenant shall pay the total deferred rent in the amount of $336,727.92 with interest thereon at 6% per annum payable in 12 monthly installments of $28,980.97 for the first 11 months and $28,836.79 for the 12th month, including general excise tax thereon, beginning on the first day of February 2011 and continuing on the first day of each and every month up to and including January 2012.

Nimitz (Deferred Rent)

3.     This Agreement may be executed in counterparts, each of which shall be deemed an original, and said counterparts together shall constitute one and the same document, binding on all parties hereto.

4.     All the terms and conditions of the Lease, as amended by its amendments, remain in full force and effect except as agreed upon herein. The Lease and its amendments, along with this Agreement, constitute the entire agreement between Landlord and Tenant and may not be modified except by an instrument in writing duly executed by the parties hereto. In the event of any conflict between the terms of the Lease, its amendments and the terms of this Agreement, the terms of this Agreement shall control.

**IN WITNESS WHEREOF,** the parties hereto have caused these presents to be executed the day and year first above written.

**HONOLULU, LIMITED**
a Maryland corporation

By:_____
   Alvin Awaya
   Its Executive Vice President

                                        "Landlord"

**POMARE, LTD.**
a Hawaii corporation

By_____
   Donald Bum Sik Kang
   Its President

                                        "Tenant"

U.S. Bankruptcy Court - Hawaii  #15-00203   Dkt # 140-2   Filed  04/20/15   Page 85 of 92


# AGREEMENT TO DEFER RENT
## (700 NORTH NIMITZ HIGHWAY, HONOLULU, OAHU)

**THIS AGREEMENT TO DEFER RENT** (this "**Agreement**"), made and executed this \_\_\_\_\_ day of _____ JAN 2 0 2012 \_\_\_\_\_, 2012 by and between HONOLULU, LIMITED, a Maryland corporation, whose principal place of business and mailing address is 3660 Waialae Avenue, Suite 400, Honolulu, Hawaii 96816, hereinafter called "**Landlord**", and POMARE, LTD., a Hawaii corporation, whose principal place of business and mailing address is 700 North Nimitz Highway, Honolulu, Hawaii 96817, hereinafter called "**Tenant**",

## W I T N E S S E T H:

**WHEREAS**, Landlord and predecessor in interest to Tenant entered into that certain Indenture of Lease dated August 24, 1982 covering premises located at 700 North Nimitz Highway, Honolulu, Hawaii, as amended by First Amendment dated October 4, 2001, Second Amendment dated June 26, 2003, Third Amendment dated January 31, 2008, [Fourth] Amendment dated December 5, 2008, Fifth Amendment dated January 9, 2009, Sixth Amendment dated October 7, 2009, and Agreement to Defer Rent dated December 15, 2010 (collectively, the "**Lease**");

**WHEREAS**, Tenant has requested that Landlord defer all rent due under the Lease during the period beginning February 1, 2012 and continuing through May 31, 2012; and

**WHEREAS**, Landlord is prepared to accommodate Tenant's request to defer rent;

**NOW, THEREFORE, IT IS HEREBY AGREED**, by and between Landlord and Tenant, that:

1.    All rent and general excise tax thereon due under the Lease during the period beginning February 1, 2012 and continuing through May 31, 2012 is deferred and shall be paid in accordance with section 2 below.

2.    Tenant shall pay the total deferred rent in the amount of $400,000 payable in 18 monthly installments of $22,222 for the first 17 months and $22,226 for the 18th month, plus general excise tax thereon, beginning on the first day of December 2012 and continuing on the first day of each and every month up to and including May 2014.

Nimitz (Deferred Rent)

3.    This Agreement may be executed in counterparts, each of which shall be deemed an original, and said counterparts together shall constitute one and the same document, binding on all parties hereto.

4.    All the terms and conditions of the Lease, as amended by its amendments, remain in full force and effect except as agreed upon herein. The Lease and its amendments, along with this Agreement, constitute the entire agreement between Landlord and Tenant and may not be modified except by an instrument in writing duly executed by the parties hereto. In the event of any conflict between the terms of the Lease, its amendments and the terms of this Agreement, the terms of this Agreement shall control.

**IN WITNESS WHEREOF**, the parties hereto have caused these presents to be executed the day and year first above written.

**HONOLULU, LIMITED**
a Maryland corporation

By: _____
Alvin Awaya
Its Executive Vice President

**POMARE, LTD.**
a Hawaii corporation

By _____
Mark J. Storfer
Its Executive Vice-President & C.O.O.

"Landlord"

"Tenant"

Nimitz (Deferred Rent)                    - 2 -





A Division of Pomare, Ltd.
700 North Nimitz Highway
Honolulu, HI 96817 USA
Tel: (808) 524-3966
Fax: (808) 533-6809
HILOHATTIE.COM

The Store of Hawaii

Paul L DeVille
Chief Executive Officer

June 26, 2003

Ms. Lisa Okuhata                                              **VIA FAX**
HRT, Ltd.                                                     732-7507
3660 Waialae Avenue, Suite 400
Honolulu, HI 96816-3260

Dear Lisa:

Happy to hear you are back and recovering from your ordeal. Thank you for your time both last
week and earlier this week. As we discussed a couple of days ago, the purpose of this letter is to
outline in greater detail a proposal for your consideration with regard to our Nimitz lease.

Before I do that, let me restate the major reasons we feel our proposal will hopefully be
favorably received:

1. As we discussed in our meeting last week, our Company is in trouble. We have
   reorganized the company, reduced staff by over thirty percent (30%), implemented pay
   cuts, reduced staff and store hours, closed stores, downsized stores and renegotiated
   several other store leases among other cost reduction and revenue generating programs.
   Still, this is not sufficient. We need your help on Nimitz, which is our flagship store and
   represents twenty-five percent (25%) of our business. Our need is both real and critical.
2. We are in the Special Assets category in our bank group, headed by Bank of Hawaii.
   There is enormous pressure by the new gang there to realign our costs even more than
   already done, due to the now three years running downturn in our economy (travel retail
   industry). The renewal of our line of credit is at stake – that is our lifeline.
3. We are not like most, if not all, of your other tenants. We lease over 108,000 square feet
   (Nimitz, Lihue, Lahaina). In Lahaina we drive in substantial traffic to that mall. We have
   enjoyed a long, close and mutually rewarding relationship. Our two companies' histories
   together, as well as their two founders, go way back. While we are only looking to
   change our Nimitz lease, please factor in all three leases and rental income in your
   decision.
4. The Nimitz "model" is out of kilter due to rising costs, particularly the rent. We feel it is
   substantially over market based on the market data I left with you last week. Without
   realigning the costs in our model, including rent, we will not be successful in light of the
   declining revenue stream for Nimitz.

Ms. Lisa Okuhata
June 26, 2003
Page 2

5. Lastly, a profitable and stable Hilo Hattie will continue to be a valuable long-term tenant for HRT, Ltd. That profitability and stability is also necessary to retain quality executives who will make an important difference in the course Hilo Hattie takes.

Our proposal is this:

1. Our lease (between Jim and HRT, Ltd.) is amended to include the changes, which follow, effective July 1, 2003.
2. Consent is granted to the assignment by Jim of his lease, together with all related rights and obligations, to Pomare Ltd. (dba Hilo Hattie.)
3. An allowance of $500,000 is provided to Pomare to be used over the next three years at no more that $200,000 per year for repairs and maintenance to the Nimitz property.
4. The rent would be changed to the following schedule:

| Dates | Monthly Rent | Annual Rent |
|---|---|---|
| 7/1/03-6/30/04 | $59,043.00 | $708,516.00 |
| 7/1/04-6/30/05 | $66,915.40 | $802,984.80 |
| 7/1/05-6/30/06 | $70,851.60 | $850,219.20 |
| 7/1/06-6/30/07 | $74,787.80 | $897,453.60 |
| 7/1/07-6/30/08 | $86,596.40 | $1,039,156.80 |

7/1/08 and every five (5) years thereafter, with the rent adjustment effective on July 1, 2033 remaining in effect until the expiration of the lease, shall be determined in accordance with the CPI language contained in the current lease.

Ms. Lisa Okuhata
June 26, 2003
Page 3

Lisa, I thank you and Alvin very much for your consideration. I look forward to answering any questions you may have.

Very truly yours,

Paul deVille
Chief Executive Officer

PDV/c

copy: Jim Romig

RECEIVED

JUL 1 0 2003

Agreed to and accepted this
_9ᵗʰ_ day of _July_ , _2003_
HONOLULU LIMITED

By: _____
Its Vice President

# SIXTH AMENDMENT TO LEASE

**THIS SIXTH AMENDMENT TO LEASE** (this "<u>Amendment</u>") made this ___ day of
_____, 2009, by and between HONOLULU LIMITED, a Maryland corporation, with
its address at 3660 Waialae Avenue, Suite 400, Honolulu, Hawaii 96816 ("<u>Lessor</u>"), and POMARE,
LTD, a Hawaii corporation, with its address at 700 North Nimitz Highway, Honolulu, Hawaii 96817
("<u>Lessee</u>").

OCT 07 2009

## <u>Recitals</u>

A. Lessor and the predecessor in interest to Lessee entered into that certain Indenture of Lease
dated August 24, 1982 covering premises located at 700 North Nimitz Highway, Honolulu, Hawaii, as
amended by First Amendment dated October 4, 2001, Second Amendment dated June 26, 2003, Third
Amendment dated January 31, 2008, [Fourth] Amendment dated December 5, 2008, and Fifth
Amendment dated January 9, 2009 (collectively, the "<u>Lease</u>").

B. Lessor and Lessee, wish to further amend the Lease, as herein set forth.

## <u>Agreement</u>

For good and valuable consideration as hereinafter set forth, the sufficiency of which is hereby
acknowledged, the parties agree as follows:

1. **Rent.** Lessee shall pay rent to Lessor, net over and above all taxes, assessments and other
charges payable by Lessee the rent of ONE HUNDRED THOUSAND AND NO/100 DOLLARS
($100,000.00) per month commencing October 1, 2009 and continuing to, and including, June 30, 2013,
as required by the Lease.

2. **Deferred Rent.** Lessee shall pay all rent due under the Lease deferred pursuant to the
[Fourth] Amendment dated December 5, 2008 and Fifth Amendment dated January 9, 2009 (together,
"<u>Deferred Rent</u>") in connection with Lessee's bankruptcy proceeding in Case No. 08-01488 in the
Bankruptcy Court of the District of Hawaii in the total amount of ONE MILLION TWO HUNDRED
FIFTY SIX THOUSAND FIVE HUNDRED FORTY FOUR AND 00/100 DOLLARS ($1,256,544.00) as
follows:

   (i)  One hundred twenty (120) equal monthly installments of SEVEN THOUSAND
        FIVE HUNDRED THIRTY AND 64/100 DOLLARS ($7,530.64), beginning on
        the first day of November 2009 and continuing on the first day of each and every
        month up to and including October 1, 2019; and

   (ii) A balloon payment consisting of all remaining unpaid Deferred Rent in the
        amount of ONE MILLION FIFTY ONE THOUSAND ONE HUNDRED
        THIRTY TWO AND 00/100 DOLLARS ($1,051,132.00) and accrued but unpaid
        interest, on or before October 1, 2019.

3. **Counterparts.** This Amendment may be executed in two or more counterparts, each of which
shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

4. **No Further amendments; Conflicts.** All the terms and conditions of the Lease, as amended
by the Amendments, remain in full force and effect except as expressly amended herein. The Lease and
Amendments, along with this Amendment, constitutes the entire agreement between Lessor and Lessee

and may not be modified except by an instrument in writing duly executed by the parties hereto. In the event of any conflict between the terms of the Lease, Amendments, and the terms of this Amendment, the terms of this Amendment shall control.

Lessor and Lessee have executed this Sixth Amendment to Lease as of the date first written above.

**HONOLULU LIMITED**, a Maryland corporation

By: _____
Name: Alvin Awaya
Its Executive Vice President

Lessor

**POMARE, LTD**, a Hawaii corporation

By: _____
Name: Donald Bum Sik Kang
Its President

Lessee