## LETTER OF INTENT
## ("LOI")

March 25, 2015

Mr. Donald Bum Sik Kang, President ("Don")
Mr. Mark Storfer, Executive V.P./COO ("Mark")
Pomare, Ltd.
700 North Nimitz Hwy.
Honolulu, Hawaii 96817
(hereinafter "Seller" or "Pomare")

> This LOI is from: Mr. Alec J. Glasser, Manager
> Adobe/Avery Parkway, LLC
> 301 Forest Avenue
> Laguna Beach, California 92651
> (hereinafter "Buyer" or "Adobe")
> On behalf of a new yet to be formed entity controlled by Buyer

> Re: 700 North Nimitz Hwy., Honolulu, Hawaii 96817 currently owned by Honolulu LTD ("Weinberg Trust") and leased by Pomare, Ltd. TMK: 1-1-5-013-003, 1-1-5-013-004 and 1-1-5-013-018 (collectively, "Property")
> This is a leasehold transaction.

Dear Sirs:

This letter is to introduce the basic business terms and conditions upon which the Buyer is willing to purchase 100% of Seller's interest in the above-referenced Property and they are as follows:

| | |
|---|---|
| Property Description: | Approximately 82,240 sq. ft. land area as described above. The full legal description of the Property is attached as Exhibit A. (If the legal description is not available at the time of execution of this Agreement the Parties shall attach the description as soon as same is available.) |
| Seller: | Pomare, Ltd., Debtor and Debtor-in-Possession in that certain Chapter 11 proceeding, entitled, In re Pomare, Ltd., dba Hilo Hattie; Case No. 15-00203 |
| Purchase Price: | Four Million Eight Hundred Thousand Dollars ($4,800,000) |
| Deposit: | One Hundred Thousand Dollars ($100,000) will be deposited with a mutually agreeable escrow agent within three (3) business days of the Purchase Agreement being signed by both Buyer and Seller. |

| | |
|---|---|
| Finance Contingency: | None |
| Proof of Funds: | Due five (5) business days prior to date set for hearing on Bid Procedure motion. |
| Purchase Agreement: | Within twenty-one (21) days of the date of this agreement, Buyer and Seller shall execute a Purchase Agreement containing the terms outlined herein and such other terms and conditions as are customary and as the parties may mutually agree on, including but not limited to providing for Buyer's right to extend the closing of this transaction by up to sixty (60) days. This LOI and/or the Purchase Agreement (once executed) shall be assignable by Buyer to a new yet to be formed entity. In case the Purchase Agreement is not fully executed within 21 days of the date of this LOI, this LOI shall become null and void and of no further force or effect. |
| | Commissions: Seller shall pay through escrow at closing a fee of four percent (4%) of the sales price to Buyer's broker, RAW Enterprises, Inc. Seller has no broker on this transaction. |
| Bankruptcy Court Approval/Bid Procedures: | Time is of the essence. This Proposal is predicated on compliance with the following timeline to obtain final approval by the Bankruptcy Court in Seller's Chapter 11 case: |

1. File the motion to approve LOI/Purchase Agreement and Bid Procedures by March 26, 2015

2. Complete draft of Purchase Agreement by April 15, 2015

3. Approval of Bid Procedures no later than April 30, 2015

4. Due diligence period for potential bidders commencing on date the Bankruptcy Court enters its order approving the Bid Procedures through July 1, 2015

5. Deadline for competing bids: July 15, 2015

6. Auction sale on or about: July 24, 2015

7. Confirmation of auction on or about: July 27, 2015

| | |
|---|---|
| Due Diligence Period: | Sixty (60) days from Court approval of the Bid Procedure Motion |

| | |
|---|---|
| Closing: | Upon the later of (30) days from entry of an Order approving the sale and the closing date provided under the Purchase Agreement including any extensions thereto. |
| Additional Considerations: | Seller agrees that Seller will pay any and all rent, utilities, special assessments and real estate taxes in full so that they are current and nothing is owed on the Property at the Closing Date. |
| | At Buyer's request during the due diligence period, Seller agrees that Seller will exercise its right to extend the term of the lease for the Property; provided that Seller's exercise of its right and the extension thereof will be subject to only such conditions that Buyer agrees with (which agreement will be at the Buyer's sole and absolute discretion); and provided that the extension of the term of the lease for the Property be effective on or before Buyer's closing of the purchase of the Property. |
| Break-up Fee: | In consideration of Buyer continuing to pursue this transaction with the risk that as the "stalking horse," the Buyer will not be the court-approved purchaser of the Property, provided that Buyer affirms its bid for the Property on the deadline for competing bids, Seller agrees to reimburse Buyer the $100,000 deposit delivered by Buyer to Escrow for this transaction and to pay to Buyer a break-up fee of Two Hundred Fifty Thousand Dollars ($250,000) from the Closing of a sale of the Property to any third party. |
| Due Diligence: | Upon full execution of this LOI, Seller shall provide Buyer with all information in its possession relating to the Property. This shall include but not be limited to: |

1. Title to land or master lease if it is a leasehold Property, including, but not limited to, any existing, threatened, or proposed lawsuits of which Seller has knowledge.

2. All encumbrances, liens, or other defects or clouds on the title to the Property, whether recorded or unrecorded.

3. Hazardous waste studies and citations (if any).

4. All leases related to the Property.

5. All existing construction plans, specifications, third party reports, surveys or drawings in Seller's possession.

6. All management and contract agreements related to the Property.

CK: 169021.5

7.    All communication between Seller and any Governmental Authorities concerning the Property.

8.    All other information that would be necessary for the Buyer to evaluate the transaction.

9.    Seller will turn over all leasing and sale leads or prospects for the Property to the Buyer after this LOI is signed. Buyer shall investigate, inspect and study the Property to determine if all aspects of the Property are acceptable to Buyer, in Buyer's sole and absolute discretion, including but not limited to, all improvements thereon and including, without limitation, status of title, survey results, zoning classification of the Property, availability and adequacy of all utilities, availability and receipt of all approvals and permits from the local municipality and all necessary county, state and federal agencies as required for Buyer's intended use of the Property, rezoning of the Property and receipt of special land use approval, if needed, for the Buyer's intended use of the Property, the economic suitability and feasibility of the Property for the Buyer's intended use, availability of financing acceptable to Buyer, availability of sufficient parking to serve Buyer's intended use, review and acceptance of environmental and geo-technical inspections, review and acceptance of the physical condition of the Property, including subsurface conditions, availability of adequate access to the Property by public or private roadway or acceptable easements, review of all leases, service contracts, and statements of income and expenses pertaining to the Property and review and approval of such other matters as Buyer shall deem necessary for its intended use of the Property. Buyer may, at Buyer's sole risk and expense, access the Property to perform preliminary due diligence activities following the execution of this Letter of Intent, provided that Buyer does not materially interfere with the operations of the current user(s) of the Property. If this is a leasehold purchase this transaction is specifically contingent upon the land owner of the lease transferring the land lease (master lease) from Seller to Buyer.

Confidentiality:    None. However, Buyer shall not contact any other prospective purchaser of the Property.

Authorized Signatory: The person or persons signing this LOI on behalf of Buyer or Seller as the case may be is authorized to sign on behalf of such party and to enter into this agreement and upon execution hereof this Agreement shall be binding on the parties hereto.

If the above terms are generally acceptable, please sign below and return to the Buyer via email. This LOI is null and void if not executed and returned to us by 5:00 p.m. (HST) on the seventh (7th) day following the date shown above.

[Signatures on next page.]

CK: 169021.5

Alec J. Glasser, Manager of Adobe/Avery Parkway, LLC, a California limited liability company, for the yet to be formed Buyer entity – "BUYER"

_____     Date _____
Alec J. Glasser, Manager


Pomare, Ltd., dba Hilo Hattie,
a Hawaii corporation – "SELLER"

_____     Date 3/27/2015
Donald Bum Sik Kang
Its President


_____     Date _____
By _____
Its _____


CK: 169021.5

Alec J. Glasser, Manager of Adobe/Avery Parkway, LLC, a California limited liability company, for the yet to be formed Buyer entity – "BUYER"

_____     Date March 25, 2015
Alec J. Glasser, Manager


Pomare, Ltd., dba Hilo Hattie,
a Hawaii corporation – "SELLER"

                                    Date _____
_____
Donald Bum Sik Kang
Its President

                                    Date _____
_____
By _____
Its _____

CK: 169021.5

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

In re

POMARE, LTD., dba
HILO HATTIE

      Debtor and
      Debtor-in-Possession.

74314v4

BK. NO. 15-00203
(Chapter 11)

## **BID PROCEDURES**

As contemplated by and incorporated in that certain bid procedures order (the "Bid

Procedures Order"), the following procedures ("Bid Procedures") shall be the exclusive

mechanism governing any disposition of the Property in any form or structure to the Successful

Bidder on the terms and conditions of the Successful Bid and the associated Purchase

Documents.

1.      **Certain Defined Terms:**

    (a)    "Purchase" means the transfer of the Property to the Successful Bidder pursuant to the Purchase Agreement, as amended by the Successful Bidder, if other than the Buyer.

    (b)    "Purchase Agreement" means that certain agreement between the Debtor and the Buyer pursuant to which the Buyer has offered to acquire the Property.

    (c)    "Purchase Documents" means the Purchase Agreement and any other document deemed necessary or appropriate to effectuate the Purchase.

    (d)    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Hawaii.

    (e)    "Breakup Fee" means $250,000, payable in cash pursuant to these Bid Procedures and the Bid Procedures Order.

EXHIBIT D

(f)     "Buyer" means a special purpose entity to be created by Adobe/Avery Parkway, LLC ("Adobe") and co-investors selected by Adobe.

(g)     "Buyer's Bid" means Buyer's offer in the amount of $4,800,000, as set forth in the Purchase Agreement.

(h)     "Committee" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case.

(i)     "Debtor" means Pomare, Ltd., dba Hilo Hattie.

(j)     "Initial Minimum Overbid" means $5,100,000 in cash or such other offer that the Debtor determines to be the economic equivalent of a $5,100,000 cash bid.

(k)     "LOI" means that certain Letter of Intent ("LOI") dated March 25, 2015, executed by the Debtor and the Buyer, and filed with the Bankruptcy Court.

(l)     "Property" means that certain leasehold parcel of real property located at 700 North Nimitz Highway, Honolulu, Hawaii 96817, as more particularly described in Exhibit A, attached hereto and incorporated by reference.

## 2.     Determining Potential Bidders

To participate in the bidding process and to receive non-public information concerning the Property, each person or entity other than the Buyer ("Potential Bidder") must deliver to the Debtor and the Buyer the following materials ("Potential Bid Package"):

(a)     *Non-Binding Indication of Interest.*

An executed non-binding indication of interest at a price at least equal to the Initial Minimum Overbid.

(b)     *Confidentiality Agreement.*

An executed confidentiality agreement in a form reasonably acceptable to the Debtor. It is contemplated that the form of confidentiality agreement proposed by the Debtor shall be substantially similar for all Potential Bidders.

(c)     *Identification of Bidder.*

2

Each Potential Bid Package shall identify the Potential Bidder and the Bidder's Sponsors (if any), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

(d)     *Corporate Authority.*

Each Potential Bid Package shall contain written evidence of the Potential Bidder's Board of Directors' (or comparable governing body) approval of the proposed Purchase; *provided*, *however*, that, if the Potential Bidder is an entity specially formed for the purpose of acquiring the Property, then the Potential Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the contemplated transactions by the Board of Directors (or comparable governing body) of each of the equity holder(s) of the Potential Bidder ("Bidder's Sponsors").

(e)     *Proof of Financial Ability to Perform.*

Each Potential Bidder must provide evidence that the Debtor reasonably concludes demonstrates the Potential Bidder has the necessary financial ability to close the Purchase.  Such information should include, inter alia, the following:

(i)     contact names and numbers for verification of financing sources,

(ii)    evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Purchase, which commitments shall not be contingent or conditional; and

(iii)   Any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, demonstrating that such Potential Bidder has the ability to close the Purchase;

The Debtor shall determine, in its reasonable discretion, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

3

3.    **Determination of Potential Bidders; Notification**

(a)    *Determination of Potential Bidders.*

Within five (5) business day after the submission of a Potential Bid Package, the Debtor shall determine whether that party qualifies as a Potential Bidder.  The Debtor shall have the discretion to determine whether a party may be a Potential Bidder based upon the content of the Potential Bid Package, as well as commercial and competitive considerations.

(b)    *Notification of Potential Bidders.*

Upon determining that a party is a Potential Bidder, the Debtor shall immediately thereafter notify the Buyer, the Committee, and each Potential Bidder in writing. Contemporaneous with notifying a party that it is a Potential Bidder, the Debtor shall provide that Potential Bidder with access to the same confidential, evaluation materials and information provided by the Debtor to the Buyer and each other Potential Bidder, which shall include financial information and other data related to the Property and/or such other information as the Potential Bidder may reasonably request.  If the Debtor furnishes any information related to the Debtor not heretofore given to the Buyer, then the Debtor shall make such information available to the Buyer and each Potential Bidder.

4.    **Determining Qualified Bids and Qualified Bidders**

(a)    *Terms and Conditions of a Qualified Bid.*

Each offer, solicitation or proposal ("Bid") from a Potential Bidder must satisfy each of the following conditions to be deemed a "Qualified Bid" and for the Potential Bidder to be deemed a "Qualified Bidder":

4

(i)     Nature of Bids.

A Bid shall include a copy of the Purchase Agreement marked to show all changes requested by the Potential Bidder (including those related to purchase price), shall not be subject to any financing or due diligence contingencies, and must remain open and binding on the Potential Bidder until and unless the Auction, as defined below, concludes or the Debtor receives and accepts a higher Bid at the Auction.  The Debtor may conclude, in its reasonable business judgment, that any changes to the Purchase Agreement are detrimental to unsecured creditors or the estate and based on such determination decline to designate a Potential Bidder as a Qualified Bidder.  In addition, the Potential Bidder must deliver a fully executed copy of the Potential Bidder's proposed Purchase Agreement, including any increased bid at the Auction, which Purchase Agreement shall be binding on the Potential Bidder if its Bid is accepted as the best Bid by the Debtor at the Auction.

(ii)    Minimum Over-Bid.

The consideration proposed by the Bid can include cash or cash equivalents that equal or exceed the sum of $5,100,000.

(iii)   No Bid Protections for Potential Bidders.

A Bid may not request any break-up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, neither the tendering of a Bid nor the determination that a Bid is a Qualified Bid shall entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.

5

(iii)    Bid Deadline.

Regardless of when a party qualifies as a Potential Bidder, the Debtor and the Notice Parties must receive a Bid in writing, on or before the "Bid Deadline," which shall be July ___, 2015, at 4:00 p.m., Hawaii Standard Time.

(iv)    Cash Deposit.

Each Bid, other than Buyer's bid, must be accompanied by a $250,000 USD cash deposit payable to a non-interest bearing escrow account to be identified and established by the Debtor. The deposit of the Successful Bidder shall be increased to 10% of the consideration included in the Successful Bid within three (3) business days after the Successful Bid is approved by the Bankruptcy Court.

(v)    Refund of Deposits

In the event any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the Potential Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after that determination. Each Qualified Bidder, including Buyer, other than the Successful Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after the selection of the Successful Bid.

(b)    *Qualified Bidders.*

Pursuant to the terms and conditions set forth in this § 4(b), the Debtor shall identify and notify all bidders whether they are Qualified Bidders by July ___, 2015. Any party may seek the Court's review of the Debtor's determination whether a Potential Bidder is a Qualified Bidder; *provided*, *however*, that any such challenge must be raised and concluded prior to the commencement of the Auction. The Debtor's determination of the Qualified Bidders shall become irrevocable and unreviewable once the Auction has commenced.

6

        (i)      Buyer.

Notwithstanding anything in these Bid Procedures to the contrary, the Buyer is deemed a Qualified Bidder, and the Buyer's Bid set forth in the Purchase Agreement shall be deemed a Qualified Bid, for all applicable purposes under these Bid Procedures.

        (ii)     Other Qualified Bidders.

Each Bid received from a Potential Bidder that satisfies each of the conditions set forth herein shall constitute a "Qualified Bid" and the bidder shall be deemed a "Qualified Bidder."

**5.**    **Notice of the Auction or of Absence of Qualified Bids**

If the Debtor receives a Qualified Bid other than the Buyer's Bid, an auction ("Auction") will be held on July ___, 2015, at the offices of Seller's counsel, Wagner Choi & Verbrugge, 745 Fort Street, Suite 1900, Honolulu, Hawaii 96813, or at any such other location as the Debtor may hereafter designate. On or prior to 5:00 p.m., Hawaii Standard Time, three business days before the Auction, the Debtor shall provide to Buyer and each Qualified Bidder that has submitted a Qualified Bid:

    a)  Written notice of the Auction; and

    b)  Copies of all Qualified Bids.

    c)  Identification of the "Initial Bid" as determined pursuant to Paragraph 6(b), below.

The Debtor may disregard any Bids received after the Bid Deadline and any such Bids shall be deemed not to be Qualified Bids. If the Debtor has not received any Qualified Bids prior to the Bid Deadlines other than Buyer's Bid, the Buyer shall be deemed the Successful Bidder, no Auction shall be conducted and the Debtor shall promptly seek confirmation of the Purchase, pursuant to the Purchase Agreement.

U.S. Bankruptcy Court - Hawaii  #15-00203  Dkt # 140-3  Filed 04/20/15  Page 14 of 29

## 6. The Auction

(a) *Attendance at and Participation in the Auction.*

In addition to the Debtor and its advisors, the only parties (and their advisors) eligible to participate in the Auction shall be: (i) the Buyer and its representatives and advisors, (ii) the Committee and its representatives and advisors, and (iii) those Qualified Bidders who have submitted a Qualified Bid to the Debtor and their advisors.

(b) *The Auction Process.*

(i) The Debtor Shall Conduct the Auction.

The Debtor and its professionals shall direct and preside over the Auction. At the commencement of the Auction the Debtor shall announce and describe the terms of the highest Qualified Bid. Bidding shall commence with the highest Qualified Bid ("Initial Bid"), as determined by the Debtor, in its reasonable business judgment, after consultation with its advisors. The foregoing determination shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate, including, inter alia, the following: (A) the amount and nature of the consideration; (B) the proposed assumption of any liabilities, if any; (C) the ability of the Qualified Bidder to close the proposed transaction; (D) the proposed closing date; the likelihood, extent and impact of any potential delays in closing; (E) any purchase price adjustments; and (F) the net economic effect of any changes from the Buyer's transaction documents, if any, contemplated by the Purchase Agreement relating to the Initial Bid ("Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Buyer's Bid, all Overbids and the Successful Bid.

8

(ii)     Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Initial Bid.  To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(A)     Minimum Overbid Increment.

Any Overbid after the Initial Bid shall be made in increments of at least $100,000.

(B)     Remaining Terms are the Same as for Qualified Bids.

Except as modified below, an Overbid must comply with the conditions for a Qualified Bid set forth above.  Any Overbid must remain open and binding on the Bidder until and unless the Debtor accepts a higher Qualified Bid as an Overbid.

To the extent not previously provided (which shall be determined by the Debtor), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in their discretion) demonstrating such Qualified Bidder's ability to close the proposed Purchase pursuant to the terms of such Overbid.

(iii)     Announcing Overbids.

The Debtor shall announce at the Auction the material terms of each Overbid, the basis for the calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtor's estate based on, inter alia, the Bid Assessment Criteria.

(iv)     Consideration of Overbids.

The Debtor reserves the right, in its reasonable business judgment, to make one or more adjournments in the Auction to, among other things:  facilitate discussions between the Debtor, on the one hand, and individual Bidders, on the other hand; allow individual Bidders to consider

9

how they wish to proceed; and give Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Purchase at the prevailing Overbid amount;

    (v)  Closing Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtor determines in its reasonable business judgment, after consultation with its advisors, is the highest and best Qualified Bid. The Auction shall not close unless the Successful Bidder has submitted a fully executed Purchase Agreement memorializing the terms of the Successful Bid.

    (vi)  Additional Procedures.

The Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g. the amount of time to make subsequent overbids) for conducting the Auction so long as such rules are not inconsistent with these Bid Procedures.

    (vii)  Consent to Jurisdiction as Condition to Bidding.

All Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the sale of the Property and the construction and enforcement of the Purchase Agreement.

**7.  Identification of the Successful Bidder and Acceptance of Successful Bid**

  (a)  *Identification of the Successful Bidder.*

At the close of the Auction, the Debtor shall identify the "Successful Bidder" which will be determined by considering the Bid Assessment Criteria.

10

After announcing the Successful Bidder, the Debtor shall declare the Auction closed. Once the Auction is closed, the Debtor shall be prohibited from discussing, soliciting or accepting any Bids for the Property other than the Successful Bid.

**8.      Confirmation of Sale**

The Debtor will use its best efforts to obtain the Court's approval of the sale of the Property to the Successful Bidder pursuant to the form of the Purchase Agreement agreed to by the Debtor and the Successful Bidder.  The hearing on Confirmation of Sale to the Successful Bidder shall be held on August ___, 2015, at ____. ___.m. at the United States Bankruptcy Court for the District of Hawaii, 1132 Bishop Street, Suite 350L, Honolulu, Hawaii  96813.

**9.      Breakup Fee**

The Debtor and the Buyer agree and fully intend to negotiate and finalize a Purchase Agreement providing for a Purchase on the terms set forth in, and consistent with the LOI.  The Buyer shall become eligible to receive the Breakup Fee, which shall be payable according to the terms of these Bid Procedures, upon the occurrence of one or more of the following, each a "Breakup Fee Eligibility Event": (a) the Debtor and the Buyer shall have (i) negotiated and executed the Purchase Agreement; (ii) Buyer confirms that it has completed all due diligence; (iii) Buyer reaffirms its Bid equal to the Purchase Price set forth in the Purchase Agreement; and (iv) Buyer has committed to proceed with the Purchase or its inability to do so is the direct result of the actions of the Debtor.

Subject to the occurrence of a Breakup Fee Eligibility Event, the Breakup Fee shall be payable to Buyer if (a) Buyer has not previously defaulted under the terms of the Purchase Agreement, and (b) any party other than the Buyer effectuates any transaction, sale, merger, recapitalization, plan of reorganization or any other disposition of any material portion of the

11

Property, including the consummation of any plan of reorganization whereby existing secured and/or unsecured creditors convert their claims into equity. The Breakup Fee shall be paid in cash directly to Buyer from escrow at the time of the Closing of the Purchase, and the Breakup Fee shall be deemed to be a superpriority administrative expense under section 503 of the Bankruptcy Code, with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code (a "Super-Priority Claim"). If the Buyer is not the Successful Bidder, the Successful Bidder's cash deposit, required under paragraph 4(a)(iv) above, shall not be released or applied until the Breakup Fee has been paid in full. If the Purchase is effectuated through a Plan, including any plan of reorganization whereby existing secured and/or unsecured creditors convert their claims into equity, the Breakup Fee shall be paid in cash on the effective date of such Plan.

**10.     No Modification of Bid Procedures**

The Bid Procedures may not be modified except with the express written consent of the Buyer and the Debtor.


**[Remainder of this page left intentionally blank]**

12

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("Agreement") dated as of _____ \_\_, 2015, is entered into by and among POMARE, LTD., dba Hilo Hattie ("Debtor"), and _____ ("Bidder"), by and through their respective attorneys.

## WITNESSETH:

WHEREAS, Debtor is the debtor and debtor-in-possession pending in the U.S. Bankruptcy Court for the District of Hawaii ("Bankruptcy Court") as Case No. 15-00203 ("Bankruptcy Case");

WHEREAS, the Debtor owns that certain leasehold property located at 700 North Nimitz Highway, Honolulu, Hawaii 96817 ("Property");

WHEREAS, Bidder has requested certain nonpublic, confidential or proprietary information concerning the Property; and

NOW, THEREFORE, it is hereby agreed as follows:

1.      The term "Confidential Information" means all information which is disclosed to Bidder before or after the date of this Agreement regarding the Property. "Confidential Information" does not include any information that: (a) is or becomes generally available to the public, other than as a result of disclosure or actions by Bidder or its Representatives in breach of this Agreement; (b) becomes available to Bidder or its Representatives on a non-confidential basis from a source (other than the Debtor, or its Representatives); or (c) was in Bidder's possession prior to the date of this Agreement and was obtained on a non-confidential basis from a source other than the Debtor, or its Representatives, provided that Bidder had no reasonable basis to believe, as a result of the circumstances under which it obtained the information or otherwise, that such information was obtained from a source that was prohibited from disclosing such information to Bidder.

2.      The term "Representative(s)" means shall mean, any of each party's directors, manager, officers, employees, agents, representatives, consultants, advisors, potential financing sources, accountants, experts, legal counsel and other professionals.

3.      Bidder agrees that: (a) it shall use the Confidential Information solely as necessary to conduct its due diligence, analysis and evaluation of the Property in connection with a possible purchase of the Property; and (b) shall not disclose, except as permitted herein, the Confidential Information, to any Representative without first obtaining that Representative's signature to the Joinder Agreement attached hereto as Exhibit "A".

4.      Bidder hereby agrees that all Confidential Information belongs to the Debtor and shall remain the exclusive property of the Debtor.

EXHIBIT E

5.     Bidder hereby agrees that it shall not discuss with any other potential purchaser, any matters relating to the acquisition of the Property.

6.     Bidder shall return, within ten (10) business days, all Confidential Information, including all copies, summaries or excerpts thereof, to the Debtor upon the Debtor's written notice to Bidder. In the event Bidder does not purchase or otherwise acquire the Property, Bidder shall promptly return to the Debtor, all copies, summaries or excerpts of any Confidential Information. Notwithstanding the return of Confidential Information, Bidder will continue to be bound by its obligations of confidentiality and other obligations hereunder.

7.     In the event that Bidder or its Representatives are requested or required to disclose any of the Confidential Information in response to questions, interrogatories, requests for information or documents in legal proceedings, or a subpoena, other similar process, Bidder shall provide the Debtor with prompt written notice of any such request or requirement so that the Debtor may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement.

8.     It is understood and agreed that no failure or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

9.     It is further understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement by Bidder or any of its Representatives and that the Debtor shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach. Specifically, the Debtor shall be entitled to a temporary restraining order, or a preliminary or final injunction without the necessity of posting any bond or undertaking in connection therewith to restrain the breaching party from such violations or threatened violations. Such remedies shall not be deemed to be the exclusive remedies for a breach by a party of this Agreement but shall be in addition to all other remedies available at law or equity. Bidder agrees that it is subject to the jurisdiction and venue of the Bankruptcy Court presiding over the Bankruptcy Case for purposes of enforcing obligations and resolving any disputes under this Agreement.

//

//

//

//

//

//

All notices or other communications which are required or permitted under this Agreement shall be in writing and shall become effective when delivered by facsimile, electronic mail, overnight courier service, registered or certified mail (postage prepaid) or hand delivery, addressed as follows or to such other addresses or facsimile numbers as may be thereafter designated in writing by such party to the other party:

Debtor:  Pomare, Ltd., dba Hilo Hattie
700 North Nimitz Highway
Honolulu, Hawaii 96817
Attn: Mark J. Storfer
Telephone: (808) _____
Facsimile: (808) _____
Electronic Mail: _____

with copies to:

WAGNER CHOI & VERBRUGGE
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Attn: James A. Wagner, Esq.
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Electronic Mail: jwagner@hibilaw.com

Bidder: See below.

10.     This Agreement shall be governed by and construed in accordance with the laws of the State of Hawaii. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all such counterparts shall together constitute one and the same instrument.

//

//

//

//

//

//

//

11.     If any action should arise among the parties hereto to enforce or interpret the terms of this Agreement, the prevailing party in such action shall be reimbursed for all reasonable expenses incurred in connection with such action, including reasonable attorneys' fees.

POMARE, LTD., dba Hilo Hattie

By _____
     Its Attorney

ACCEPTED AND AGREED TO THIS _____ DAY OF
_____, 2015

[BIDDER]

By _____
   Its Attorney

BIDDER CONTACT INFORMATION:

Address:

_____

_____

Contact Person: _____

Telephone: _____

Electronic Mail: _____

# EXHIBIT "A"

## JOINDER TO CONFIDENTIALITY AGREEMENT

The undersigned, _____, hereby acknowledges that the undersigned is a Representative of _____ ("Bidder"), which is a party to that certain Confidentiality Agreement dated _____, 2015, by and among the Bidder and Pomare, Ltd., dba Hilo Hattie,  which was entered into in connection with the Chapter 11 bankruptcy case, In re Pomare, Ltd., Bk. No. 15-00203, now pending in the United States Bankruptcy Court for the District of Hawaii ("Bankruptcy Court"), to which this Joinder is attached; that the undersigned has read and understands the terms of the Confidentiality Agreement; that the undersigned agrees upon threat of penalty of contempt and other civil remedies, as applicable, to be bound to perform all of the covenants and obligations of Bidder under the Confidentiality Agreement as if a party thereto; and that the undersigned hereby irrevocably submits his, her or its person to the jurisdiction of the Bankruptcy Court for the purposes of securing compliance with the terms and conditions of the Confidentiality Agreement.

DATED: _____.


_____

Representative of _____

James A. Wagner

Chuck C. Choi

Neil J. Verbrugge

Allison A. Ito

**WAGNER
CHOI &
VERBRUGGE**
ATTORNEYS AT LAW

Topa Financial Center, Fort Street Tower
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813

Phone: (808) 533-1877
Fax: (808) 566-6900
Email: jwagner@hibklaw.com

April 14, 2015

Delwyn H.W. Wong, Esq.
Law Offices of Reuben S.F. Wong
1164 Bishop Street, Suite 1006
Honolulu, Hawaii 96813

Re:     **Assignment and Assumption of Nimitz Lease**

Dear Del:

The purpose of this letter is to confirm the agreements between Honolulu Limited, as Lessor, and Pomare, Ltd., as Lessee, regarding Lessee's intent to assume and assign that certain Lease, dated August 24, 1982, as amended, covering the premises located at 700 North Nimitz Highway, Honolulu, Hawaii 96817 ("Lease"). Lessee filed for relief under Chapter 11 of the United States Bankruptcy Code on February 19, 2015 ("Petition Date"), commencing that certain proceeding entitled, *In re Pomare, Ltd.*; Case No. 15-00203 ("Bankruptcy Case") in the United States Bankruptcy Court for the District of Hawaii ("Bankruptcy Court").

Lessee intends to seek Bankruptcy Court approval for the assumption and assignment of the Lease to a third party buyer, pursuant to certain Bid Procedures. Lessee has entered into a Letter of Intent, dated March 25, 2015, with Adobe/Avery Parkway, LLC for the purchase and sale of the Lease for a purchase price of FOUR MILLION EIGHT HUNDRED THOUSAND AND NO/100 DOLLARS ($4,800,000.00) ("Current Offer"), subject to overbids pursuant to the Bid Procedures. Lessee estimates that the Net Proceeds, defined below, from the Current Offer are estimated to be FOUR MILLION ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($4,100,000.00).

The purpose of this letter is to confirm the following:

1.     <u>Court Approval</u>. The terms of this letter agreement and the effectiveness of the proposed Seventh Amendment to Lease, attached hereto as Exhibit A, are conditioned upon and subject to the entry of a final order in the Bankruptcy Court approving the assumption and assignment of the Lease to a third party buyer, pursuant to Section 365 of the Bankruptcy Code.

2.     <u>Cure</u>. As a cure of all of Lessee's pre-petition monetary defaults under the Lease, the parties agree as follows:

**EXHIBIT F**

a.  Payment of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00), as the cure amount in the event the Current Offer is approved by the Court and closes. The cure payment shall be paid from escrow at closing of the assumption and assignment of the Lease.

b.  In the event there are overbids at the auction, pursuant to the Bid Procedures, that result in Net Proceeds received by Lessee in excess of FOUR MILLION ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($4,100,000.00), the Net Proceeds in excess of FOUR MILLION ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($4,100,000.00), shall be split equally between Lessor and Lessee.

3.  Net Proceeds. "Net Proceeds" shall mean the gross bid amount confirmed by the Court, less (i) Buyer's broker commission, if any (commissions on the Current Offer would be $192,000), (ii) real property taxes paid at closing (approximately $500,000), (iii) normal escrow closing and conveyance tax amounts paid by Pomare, and (iv) the break-up fee, if any.

4.  Term Extension. The term of the Lease is extended for an additional twenty (20) years to and including October 18, 2059. For and during each successive five (5) year period after October 18, 2039, annual rent shall be determined in accordance with subparagraph (e) of the Lease provided, however, that in no event shall the annual rent be less than the annual rent for the immediately preceding period.

5.  Assignment as Amended. Upon Court approval of the assumption and assignment of the Lease, Lessor and Lessee shall execute the Seventh Amendment to Lease, attached hereto as Exhibit A and the Lease will be assigned, as amended by the Seventh Amendment to Lease, to the successful bidder approved by the Court.

I believe this correctly sets forth the agreement between our respective clients. I have provided at the foot hereof signature blocks for the approval by our respective clients. Should you have any comments, revisions, and/or questions, please feel free to contact me. If you find the agreement set forth in this letter acceptable, please have your client execute a copy of this letter at the foot hereof and return it to my office.

Delwyn H.W. Wong, Esq.
April 14, 2015
Page 3

Thank you and your client for your continued cooperation in this matter.

Sincerely,

JAMES A. WAGNER

JAW:la

Enc.

APPROVED:

HONOLULU LIMITED, a Maryland corporation

By:
Print Name: Alvin Awaya
Its: Vice President

POMARE, LTD., a Hawaii corporation

Digitally signed by Mark Storfer
DN: cn=Mark Storfer, o=Pomare, Ltd, ou,
email=MStorfer@HiloHattie.com, c=US
Date: 2015.04.14 14:47:40 -10'00'

By:
Print Name: Mark Storfer
Its: Executive Vice President & C.O.O.

# SEVENTH AMENDMENT TO LEASE

THIS SEVENTH AMENDMENT TO LEASE ("Amendment"), made this _____ day of April, 2015, by and between HONOLULU LIMITED, a Maryland corporation, with its address at 3660 Waialae Avenue, Suite 400, Honolulu, Hawaii 96816 ("Lessor"), and POMARE, LTD., a Hawaii corporation, with its address at 700 North Nimitz Highway, Honolulu, Hawaii 96817 ("Lessee").

## Recitals

A.    WHEREAS, Lessor and the predecessor in interest to Lessee entered into that certain Lease, dated August 24, 1982, covering premises located at 700 North Nimitz Highway, Honolulu, Hawaii 96817, as amended by First Amendment, dated October 4, 2001, Second Amendment, dated June 26, 2003, Third Amendment, dated January 31, 2008 (Fourth) Amendment, dated December 5, 2008, Fifth Amendment, dated January 9, 2009, and Sixth Amendment to Lease, dated October 7, 2009 (collectively, "Lease").

B.    WHEREAS, Lessor and Lessee wish to further amend the Lease, as herein set forth.

## Agreement

For good and valuable consideration as hereinafter set forth, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    <u>Term Extension</u>.  The term of the Lease is extended for an additional twenty (20) years to and including October 18, 2059.  For and during each successive five (5) year period after October 18, 2039, annual rent shall be determined in accordance with subparagraph (e) of the Lease provided, however, that in no event shall the annual rent be less than the annual rent for the immediately preceding period.

2.    <u>Deletion</u>.  The following provisions of paragraph 15 of the Lease are hereby deleted:

> In the event of such demolition and construction, the term of this lease shall be extended for an additional twenty (20) years, so as to terminate seventy-five (75) years and ninety (90) days after the issuance of a final certificate of occupancy or the equivalent for the improvements to be constructed by the Lessor on the property.  The annual rent during the extended term shall continue to be determined and adjusted every five (5) years in the same manner and subject to the same limitations prescribed above in this lease for the determination of rent after the first approximately eleven (11) years of fixed rent.

# EXHIBIT A

3.      Counterparts.  This Amendment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

4.      No Further Amendments; Conflicts.  All the terms and conditions of the Lease, as amended by the Amendments, remain in full force and effect except as expressly amended herein.  The Lease and Amendments, along with this amendment, constitutes the entire agreement between Lessor and Lessee and may not be modified except by an instrument in writing duly executed by the parties hereto.  In the event of any conflict between the terms of the Lease, Amendments, and the terms of this Amendment, the terms of this Amendment shall control.

Lessor and Lessee have executed this Seventh Amendment of Lease as of the date first written above.

HONOLULU LIMITED, a Maryland corporation

By:      _____
Print Name:      _____
Its:      _____

Lessor

POMARE, LTD., a Hawaii corporation

By:      _____
Print Name:      _____
Its:      _____

Lessee